IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

THE PHOENIX FUND LLC

Debtor

CASE NO. 26-00712 (ESL)

CHAPTER 11

FILED & ENTERED MAR/11/2026

OPINION AND ORDER

The Phoenix Fund LLC ("Debtor" or the "Fund") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 23, 2026. The Fund is subject to the regulatory oversight and authority of the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF", by its Spanish acronym).

Prior to the petition for relief, the OCIF initiated an examination of the Fund's operations. The OCIF was unable to complete the examination due to the Fund's alleged noncompliance. As a result, the OCIF filed an *Amended Complaint and Order of (I) Cease and Desist, (II) Liquidation of Private Equity Fund and (III) Interim and Permanent Appointment of Receiver to Carry Out the Liquidation* on or about February 18, 2026 (the "*Amended Complaint and Receivership Order*"). The filing of the *Amended Complaint and Receivership Order* commenced an administrative enforcement proceeding against the Fund styled Office of the Commissioner of Financial Institutions v. The Phoenix Fund LLC, Case No. C25-V-001 (the "Enforcement Action"). Following the petition date, the OCIF filed two interrelated motions: a *Motion For Entry of an Order to Continue OCIF's Enforcement Action Or, In The Alternative For Relief From The Automatic Stay* ("*Motion to Continue Enforcement Action*", dkt. #13), and an U*rgent Motion For Order Recognizing Authority of the Pre-Petition Receiver, Driven, P.S.C., to Act on Behalf of Debtor-In-Possession* ("*Motion Recognizing Authority*", dkt. #14), each filed on February 25, 2026, and relating to the Enforcement Action.

The *Motion to Continue Enforcement Action* requests that this court enter an order allowing for the continuation of the Enforcement Action relating to the *Amended Complaint and*

-1-

*Receivership Order* under Case No. C25-V-001, and argues that the automatic stay provisions of Section 362(a) of the Bankruptcy Code do not apply to bar or stay OCIF's regulatory and police powers against the Fund. The *Motion Recognizing Authority* seeks, on an emergency basis, the entry of an order recognizing the authority of Driven, P.S.C. ("Driven" or the "Receiver") to act as debtor-in-possession on behalf of the Fund.

The court notes the preliminary arguments made by the Fund in the *Notice of Intent to Oppose Motions at dkt. Nos. 13 and 14* filed on February 25, 2026 (dkt. #19). As of the undersigned date, the foregoing have not been supplemented.

Legal Issue

The issues before this court hinge on determining the direction that the case will take after considering the effect of the intersection of two basic constitutional principles, that is, the right to file for bankruptcy pursuant to Article I, Section 8, Clause 4, of the Constitution of the United States of America ("Constitution") and, the police power of the state[1] under the Tenth Amendment to the Constitution.

Traditionally, filing for protection under the Bankruptcy Code has been considered as a tool to meet financial distress for "the honest but unfortunate debtor." Local Loan Co. v. Hunt, 292 U.S. 233, 234 (1934). However, such right may be affected by the police power of the state. "The central source of state regulatory power under the state constitutional system is the police power. This is the power given to the state legislature to regulate in the service of the health, safety, and welfare of the citizenry. The police power is commonly viewed as an essential power, one that grows out of our constitutional tradition and therefore need not be established through an explicit textual warrant. Indeed, the concept of the police power emerges out of the basic principle that state constitutions as documents of limit, not of grant. It is no coincidence that the classic exegeses on the police power are from the Progressive era and its environs." Daniel B.

---

[1] The term "State", as defined in Section 101(52) of the Bankruptcy Code, 11 U.S.C. § 101(52), "includes the District of Columbia and Puerto Rico, except for the purposes of defining who may be a debtor under chapter 9 of this title."

Rodriguez, The Inscrutable (Yet Irrepressible) State Police Power, 9 N.Y.U. J.L. & Liberty 662, 662 (2015).

The Parties

I.        The OCIF

As stated by OCIF in its *Motion to Continue Enforcement Action*, "OCIF is the entity charged under Puerto Rico law to oversee, supervise, and regulate private equity funds such as the Debtor, among other financial entities. The Debtor's business generally involves raising capital from investors to pursue investments. As part of OCIF's regulatory duties, OCIF has attempted to conduct an examination of the Debtor's financial condition for over a year and has not been able to complete it as a result of the Debtor's numerous defaults and actions." dkt. #13, p. 2 (footnote omitted). See also 7 L.P.R.A. § 2001, *et seq.*, known as the "OCIF Enabling Act".

Section 2044.03(g)(2)(iv) of Act No. 60-2019, in its relevant part, states as follows:

> OCIF shall be empowered to examine and inspect Private Equity Funds or Puerto Rico Private Equity Funds to ensure that they informed their operations and financial results accurately, comply with their fiduciary duty to their Investors, and meet the requirements of this Code. The Fund shall pay the cost prescribed by OCIF through regulations to conduct such examinations and inspections. In the event of noncompliance, OCIF may take actions as are necessary including the liquidation of the fund and cessation of additional offerings of its securities.

13 L.P.R.A. § 45363 (g)(2)(iv). Similarly, Article 13 of Regulation No. 9461 states that, when the circumstances so merit it and it is in the best public interest, the OCIF may, in cases of noncompliance, take any measures it deems necessary, including, among other measures, the liquidation of a private equity fund and the cessation of additional offering of its securities. See Regulation for the Supervision of Private Equity Funds, Regulation No. 9461 (May 15, 2023) (Spanish, no English Translation).

The Enforcement Action and the *Amended Complaint and Receivership Order* are within the scope of OCIF's regulatory duties, as authorized under the OCIF Enabling Act, which provides, in pertinent part, as follows:

> When any of the laws and regulations he administers does not provide otherwise, to issue, after due notice and hearing, cease and desist orders, and prescribe the

-3-

terms he determines are for the benefit of the public. When in the Commissioner's opinion said violation causes or could cause immediate grave damage to industry, the citizenry or specific persons, he may issue said order of a summary nature, passing over the requirement of due notice and hearing, until the final disposition of any procedure instituted under this section.

7 L.P.R.A. § 2010(a)(10).

The OCIF Enabling Act further provides:

If as a result of an audit, examination or inspection, or of a report submitted by an examiner, it is shown that a financial institution lacks a solid financial and economic status or that it is operated or administered in such a way that the general public or persons and entities that have funds or shares in its custody are in danger of being defrauded, and in absence of a specific provision in the law to regulate the financial institution in question and which likewise empowers it, the Commissioner may assume the direction and administration of the financial institution, and promptly appoint a trustee who, in the case of insured financial institutions can be its insuring entity. The Commissioner shall hold a hearing before issuing an order to place a financial institution under his/her direction, or that of a trustee. Nevertheless, the Commissioner may issue a provisional order appointing a receiver without having to hold a hearing, when in his/her judgment, the financial institution's status is of such a nature that it is causing or may cause irreparable damage to its interests, or those of the persons and entities with funds or assets in the institution. When the Commissioner issues a provisional order to appoint a receiver, he/she shall notify the Governor of the details and grounds for his/her determination and shall hold an administrative hearing within ten (10) days following the date of notice thereof, in order to determine if it is made permanent or revoked. The receiver thus appointed shall administer the financial institution pursuant to the provisions of the law and the regulations that govern said institution, and in accordance with the regulations that govern said institution, and in accordance with the regulations promulgated by the Commissioner for receiverships or emergency measures declared under this section. Said receivership shall terminate upon the total liquidation of the financial institution, if it were necessary, or when the operations thereof, as certified by the trustee in the Commissioner's judgment, allow the return of the administration of the institution to the duly elected and appointed officers and officials, under the circumstances stipulated by the Commissioner. The Commissioner shall fix a reasonable compensation for the services rendered by the receiver and his/her employees. The determination of the Commissioner to assume the administration and direction of a financial institution or to appoint a receiver, can be reviewed by the Circuit Court of Appeals, through a petition filed within the term of ten (10) days from the date of the determination.

7 L.P.R.A. § 2010(b).

-4-

II.     <u>The Debtor and/or the Fund</u>

The Fund is a private equity fund created pursuant to Act No. 185 of November 12, 2014, as amended, known as the "Private Equity Fund Law" ("Act No. 185-2014"), with a Tax Exemption Decree effective as of December 30, 2022, pursuant to Act No. 60 of June 1, 2019, as amended, known as the "Puerto Rico Incentives Code" ("Act No. 60-2019" or the "Incentives Code") and regulated by Regulation No. 9461 of May 15, 2023, known as the "Regulation for the Supervision of Private Equity Funds" ("Regulation No. 9461").

The court notes that the *Certified Copy of Resolution of the Manager of the Phoenix Fund LLC Authorizing the Filing of a Petition for Reorganization Under Chapter 11 of the Bankruptcy Code* (the "*Corporate Resolution*", dkt. #1-1) attached to the bankruptcy petition states as follows:

> **RESOLVED**: Whereas The Phoenix Fund LLC (hereinafter "Company") received an Order from [the OCIF] placing the Company in receivership and liquidation and consequently may undertake steps to obtain possession of the Company's assets; and;
>
> **WHEREAS**, this action by [the OCIF] may not be in the best interest of all the stakeholders of the Company;
>
> **WHEREAS**, it is apparent that the continuation of the affairs of the Company without the protection of the Bankruptcy Court may result in the Company's demise;
>
> **NOW THEREFORE BE IT RESOLVED THAT**, a Petition in Proceedings for Reorganization under Chapter 11 of the Bankruptcy Code be filed by the Company and that FRANCISCO J. RIVERA, the Company's President is hereby authorized to execute on behalf of the Company and for all the necessary documents for the filing of a Petition for Reorganization under Chapter 11 of the Bankruptcy Code;
>
> **AND BE IT FURTHER RESOLVED**, that pursuant to 11 U.S.C. §1107, the Company shall exercise the rights and powers set forth therein, subject to the provisions thereof and unless the United States Bankruptcy Court for the District of Puerto Rico provides or orders otherwise, the Company will continue to operate its business and manage its affairs, as provided in 11 U.S.C. §1108;
>
> **AND BE IT FURTHER RESOLVED** that Alexis Fuentes Hernández, Esq., of Fuentes Law Offices, LLC, be retained to act as counsel for the Company in such reorganization proceedings or any other proceeding under the Bankruptcy Code;

**AND BE IT FURTHER RESOLVED**, that the undersigned hereby certify that FRANCISCO J. RIVERA is the only seniormost Company Officer of THE PHOENIX FUND LLC and that the above is a true and correct copy of a resolution adopted by the President of said Company at a duly constituted meeting held on the 23rd day of February, 2026, in accordance with its Company's operating agreement; that said resolution has not been revoked, modified, annulled or amended in any manner whatsoever.

dkt. #1-1, p. 1.

The *Corporate Resolution* clearly sets forth that the Fund believes the receivership is not in the best interest of stakeholders, and that the motivation leading to the filing of the instant Chapter 11 petition is to prevent further actions by the OCIF that may result in the "demise" of the Fund.

### Jurisdiction

This court has jurisdiction over the *Motion to Continue Enforcement Action* (dkt. #13) and the *Motion Recognizing Authority* (dkt. #14) pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(G). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested in the motions are predicated on 11 U.S.C. §§ 362(a) and (d), and Fed. R. Bankr. P. 4001 and 9014.

### Relevant Factual Background

I.      The Enforcement Action, Case No. C25-V-001

As stated, On January 27, 2025, the OCIF initiated an examination of TPF's operations prior to the petition for relief. See *Consent Order*, dkt. #14-2, p. 1. The OCIF was unable to complete the examination due to the Fund's alleged noncompliance. Id. As a result, the OCIF commenced the administrative Enforcement Action under Case No. C25-V-001, and appointed Driven as Receiver of the Fund. After several procedural events, the OCIF issued a *Consent Order for (I) Special Examination and Designation of an Examiner to Conduct It and (II) Additional Actions* (the "*Consent Order*", dkt. #14-2) dated June 25, 2025. Through the *Consent Order*, whereby Driven (now the Receiver) was appointed to conduct a "thorough examination" of the Fund, as well as all of its affiliated entities (the "Special Examination"). Id., p. 2.

On February 18, 2026, OCIF issued the *Amended Complaint and Receivership Order* (dkt. #14-1[2]) (i) ordering the Fund to cease and desist from taking any new investments pursuant to Article 10(a)(10)(A) of the OCIF Enabling Act, (ii) ordering the liquidation of the Fund pursuant to Section 2044.03(g)(2)(iv) of the Incentive Code and Article 13 of Regulation No. 9461, (iii) directing the Fund to fully cooperate with the Receiver for the taking of possession of the Fund's assets and the commencement and culmination of any investigation required to be carried out for the orderly liquidation of the Fund, and (iv) appointing Driven —on an interim basis pending the outcome of a hearing scheduled for February 26, 2026— as Receiver pursuant to Article 10(b) for the implementation of the liquidation ordered pursuant to Section 2044.03(g)(2)(iv) of the Incentive Code. See dkt. #14, p. 12, ¶ 32 (citing ¶¶ 34-35 of *Amended Complaint and Receivership Order*). Through the *Amended Complaint and Receivership Order*, pursuant to the above-cited statutes, the OCIF decreed that the Receiver (i) immediately be conferred all faculties and authorities previously held by the Fund's members, directors, managers or authorized persons to act on behalf of the Fund, to take immediate control of the Fund's assets, books and records and, *inter alia*, (ii) act as exclusive administrative member and liquidator of the Fund with the authority to, among other things, the possibility of filing voluntary petitions under the Bankruptcy Code and to act as debtor-in-possession in such proceeding. See dkt. #14, p. 13, ¶ 33 (citing ¶ 36 of *Amended Complaint and Receivership Order*).

The terms of the *Consent Order*, the Fund's consent to its issuance[3], and the appointment of Driven as Receiver in at least two administrative orders (see, *e.g.*, *Consent Order* and *Amended Complaint and Receivership Order*) make clear that the OCIF has exclusive and mandatory

---

[2] The referenced documents are all in Spanish, and no English translation has been provided. This court may only consider the merits of those documents filed in the English language. As such, the court will only note the existence of the referenced documents, not their contents. Because the court cannot independently ascertain the context of those materials in the absence of a translation, it defers to the allegations made by the OCIF regarding their context. See 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); L. Civ. R. 5(c) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English…"); P.R. LBR 9070-1(c) ("All Exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator."); In re Bernier, 2022 WL 17096264, at *6-7, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) (holding that documents not in the English language should not be considered).

[3] See, *e.g.*, *Consent to the Issuance of a Consent Order For (I) Special Examination and Designation of an Examiner to Conduct Such Examination and (II) Additional Actions*, dkt. #14-2, pp. 6-7.

jurisdiction to enforce the *Consent Order*, as was determined in Bancredito Holding Corporation v. Driven Administrative Services, LLC, 2024 WL 3401157 (D.P.R. 2024), and previously addressed by the Puerto Rico Court of Appeals in Bancredito Holding Corp. v. Driven Administrative Services, LLC (Síndico Para Bancrédito International Bank & Trust), 2023 WL 9379960 (P.R. Court of Appeals 2023). The *Consent Order* is thus mandatory and enforceable.

<u>Applicable Law and Analysis</u>

A.       <u>Police Power and Regulatory Exception</u>

The automatic stay in 11 U.S.C. § 362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the mere filing of a bankruptcy petition. <u>See</u> <u>In re Jamo</u>, 283 F.3d 392, 398 (1st Cir. 2002); <u>In re Soares</u>, 107 F.3d 969, 971 (1st Cir. 1997). However, the police power exception in § 362(b)(4) exempts from the automatic stay "the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4). <u>See also</u> <u>In re Ruiz</u>, 122 F.4th 1, 11 (1st Cir. 2024). This exception ensures that government agencies can still enforce laws "affecting health, welfare, morals and safety", and that debtors are not automatically protected in bankruptcy court from regulatory laws that directly interfere or conflict with the bankruptcy court's control over property involved in the bankruptcy case. <u>See</u> <u>In re Universal Life Church, Inc.</u>, 128 F.3d 1294, 1297 (9th Cir. 1997). "When a governmental unit decides to undertake an enforcement action and believes its action falls within the police power exception, it need not petition the bankruptcy court for permission to proceed in the ordinary course ...." <u>Chao v. Hospital Staffing Servs., Inc.</u>, 270 F.3d 374, 385 (6th Cir. 2001)." <u>In re Ruiz</u>, 122 F.4th at 13.

"In attempting to apply the § 362(b)(4) exception, courts look to the purposes of the law that the government seeks to enforce to distinguish between situations in which a 'state acts pursuant to its police and regulatory power, and where the state acts merely to protect its status

as a creditor." <u>Solis v. SCA Rest. Corp.</u>, 463 B.R. 248, 251–252 (E.D.N.Y. 2011), citing <u>Safety–Kleen, Inc. v. Wyche (In re Pinewood )</u>, 274 F.3d 846, 865 (4th Cir. 2001), quoting <u>Universal Life Church, Inc. v. United States (In re Universal Life Church Inc.)</u>, 128 F.3d 1294, 1297 (9th Cir.1997); <u>United States ex. Rel. Fullington v. Parkway Hosp., Inc.</u>, 351 B.R. 280, 282–283 (E.D.N.Y. 2006). <u>See also</u> <u>In re Montalvo</u>, 537 B.R. 128, 143 (Bankr. D.P.R. 2025).

The police power exception analysis, as applied to the actions of an agency for purposes of § 362(b)(4), is subject to two interrelated tests: (1) the public policy test and (2) the pecuniary purpose test. <u>See</u> <u>McMullen v. Sevigny (In re McMullen)</u>, 386 F.3d 320, 325 (1st Cir. 2004). The "pecuniary purpose" test focuses on whether the action relates to the protection of the pecuniary interest of the government in the debtor's property or to matters of public safety and welfare. The "public policy" test distinguishes between government actions or proceedings that effectuate or influence public policy, and those that adjudicate private rights. "If the governmental action is designed primarily to protect the public safety and welfare, then it passes the 'public policy' test and is excepted from the automatic stay. In contrast, if the government is attempting to proceed against the debtor for a pecuniary purpose, that is, to recover property from the estate, the police power exception offers no shelter and the proceeding is stayed." <u>In re Financial Oversight and Management Board for Puerto Rico</u>, 808 F. Supp. 3d 267, 275 (D.P.R. 2025) (internal marks and citations omitted). Thus, at its core, "[t]he question is whether [the governmental action] enforces a generally applicable regulatory law or whether it promotes a public policy interest beyond the government's pecuniary rights." <u>Id.</u> (internal marks and citations omitted).

Application of the police power exception occurs in two steps. First, the court must apply the statutory text of § 362(b)(4) to the facts of the case. Second, the court must consider both the public policy and pecuniary purpose tests. <u>See</u> <u>In re Financial Oversight and Management Board for Puerto Rico</u>, 2025 WL 3078311 (D.P.R. 2025). The police powers protected under § 362(b)(4) are not limited to matters directly involving public health and safety; they extend more broadly to regulatory efforts to protect public welfare, including consumer protection regulations. <u>See</u> <u>In re Ruiz</u>, 122 F.4th 14.

B.      Discussion

Irrespective of the merits of the proceedings before the OCIF, the intervention by the OCIF was due to the lack of compliance by the Fund of its obligations under the Incentive Code, resulting in the issuance of a *Consent Order* and, ultimately, liquidation of the Fund to safeguard the public welfare of the Puerto Rico financial system. The Enforcement Action in no manner or form benefits the OCIF or any related Puerto Rico government agency with any financial interest, nor does it constitute a collection action. Therefore, the police power exception of Section 362(b)(4) applies. Moreover, considering the reasons stated in the *Corporate Resolution* authorizing the filing of this bankruptcy petition illustrates what the police power exception is intended to avoid: "a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." SEC v. Brennan, 230 F.3d 65, 71 (2nd Cir. 2000); In re McMullen, 386 F.3d at 324-325 ("This exception discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers and/or consumer protection regulations"). See also In re Montalvo, 537 B.R. 142.

Under Puerto Rico law, namely Section 2044.03(g)(2)(iv) of the Incentive Code and Article 10(b) of the OCIF Enabling Act, OCIF is authorized to order the liquidation of a private equity fund, and to appoint a receiver with authority to assume direction and administration of a financial institution when circumstances warrant. Federal bankruptcy law similarly recognizes that when a receiver is appointed as management of a debtor entity with authority to control and manage the entity's affairs, that receiver's status automatically transforms into debtor-in-possession pursuant to 11 U.S.C. § 1101(1). See In re Bayou Grp., LLC, 564 F.3d 541 (2nd Cir. 2009); SEC v. Byers, 592 F. Supp. 2d 532 (S.D.N.Y. 2008). It thus follows that Driven, and not the Fund or its prior management, is the entity that is authorized to seek bankruptcy protection and to act as debtor-in-possession. See *Consent Order*, dkt. #14-2. The OCIF, with the Fund's consent, issued the Consent Order through which Driven (now the Receiver) was appointed to conduct the Special Examination on the Fund. As stated before, the OCIF issued the *Amended*

*Complaint and Receiver Order* against the Fund, (i) ordering it to cease and desist from taking any new investments, (ii) ordering its liquidation, (iii) directing it to fully cooperate with the Receiver for the taking of possession of the Fund's assets and the commencement and culmination of any investigation required to be carried out for its orderly liquidation, and (iv) appointing Driven as interim Receiver for the implementation of the Fund's liquidation. Through the *Amended Complaint and Receiver Order*, issued pursuant to the applicable above-cited statutes, the OCIF decreed that the Receiver to (i) immediately be conferred all faculties and authorities previously held by the Fund's members, directors, managers or authorized persons to act on behalf of the Fund, to take immediate control of the Fund's assets, books and records and, *inter alia*, (ii) act as exclusive administrative member and liquidator of the Fund with the authority to file voluntary petitions under the Bankruptcy Code and to act as debtor-in-possession in such proceeding. On that same vein, the *Consent Order*, which may not be overturned by this court, states that the appointment of Driven as Receiver and its powers enjoin the directors from filing the present petition. See In re Milestone Educ. Inst., 167 B.R. 716, 720 (Bankr. D. Mass. 1994) (noting that when an order appointing a receiver enjoins the directors from performing their management functions, the corporation is for all practical purposes dissolved and the receiver must perform the functions necessary to discharge his duties that the shareholders were barred from performing).

In line with the above, the Court of Appeals for the Second Circuit in the case of In re Bayou Grp., LLC, 564 F.3d 541, 545 (2nd Cir. 2009), concluded that, by virtue of a court's appointment of a person not only as a receiver of certain entities but also as new management of the debtors with the authority and capacity to manage the bankruptcy proceedings as the debtor-in-possession, that person's status, in the face of a bankruptcy case, was transformed from "corporate governor" to debtor-in-possession pursuant to 11 U.S.C. § 1101(1). Consequently, the pre-petition receiver, Driven, is the entity vested with authority to file a bankruptcy petition on behalf of the Fund and act as debtor-in-possession therein. Notwithstanding, "corporate authority

-11-

to file a bankruptcy petition—while necessary—does not impact a bankruptcy court's subject-matter jurisdiction." In re Parks Diversified, L.P., 2026 WL 588285 (9th Cir. 2026).

Conclusion

The automatic stay is inapplicable to the continued prosecution of the Enforcement Action in the OCIF's administrative forum, including the enforcement of the *Amended Complaint and Receiver Order*, the *Consent Order*, and the appointment of Driven, P.S.C., as Receiver with authority act as debtor-in-possession, pursuant to 11 U.S.C. § 362(b)(4). In view of the foregoing, both the *Motion to Continue Enforcement Action* (dkt. #13) and the *Motion Recognizing Authority* (dkt. #14) are hereby GRANTED.

In view of the foregoing, the court orders Driven, P.S.C., to inform the court within twenty-one (21) days how it intends to proceed in this case. The court notes that a status conference is scheduled for May 19, 2026. At 10:00 AM. See dkt. #6.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 11th day of March 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge

-12-