## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Chapter 11 |
| THE PHOENIX FUND LLC | Case No. 26-00712 (ESL) |
| Debtor. | |

### LIMITED OBJECTION TO THE URGENT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT ON REJECTION OF EXECUTORY CONTRACT, SETTLEMENT PAYMENT, AND RESOLUTION OF POTENTIAL CLAIMS

**COMES NOW** FCS Advisors, LLC d/b/a Brevet Capital Advisors ("Brevet"), by and through its undersigned counsel, respectfully files this limited objection (this "Limited Objection") to the *Urgent Motion for Approval of Settlement Agreement on Rejection of Executory Contract, Settlement Payment, and Resolution of Potential Claims* [Docket No. 38] (the "9019 Motion"),[1] (i) objecting to the use of settlement proceeds or the Payment by The Phoenix Fund LLC (the "Debtor") or Driven, P.S.C. ("Driven"), which constitutes Brevet's cash collateral, and (ii) moving for entry of an order prohibiting the use of Brevet's cash collateral by the Debtor without Brevet's consent.  In support of this Limited Objection, Brevet respectfully states as follows:

### PRELIMINARY STATEMENT

Brevet does not object to the entry of an order approving the 9019 Motion or the Settlement Agreement thereunder.  Through this Limited Objection, however, Brevet does not consent to the use of the Payment and any other cash, cash equivalent or proceeds received by the Debtor.  The Payment and any other cash or proceeds received by the Debtor are Brevet's Cash Collateral (as defined herein).  Brevet has not consented to the use of its Cash Collateral, nor has this Court

---

[1] Capitalized terms not otherwise defined in this Limited Objection shall have the same meaning as ascribed in the 9019 Motion.

authorized such use. Authorization could not be granted on this record in any event, as the procedural requirements of the Bankruptcy Code and due process have not been satisfied—and indeed, no such authorization has even been requested. Even if such a request had been made and the Court had considered granting it, the Debtor would be required to establish that Brevet is adequately protected for the requested use. There has been no such showing. Accordingly, any funds received in connection therewith should be segregated and held in trust for the benefit of Brevet.

## **BACKGROUND**

*(a) Brevet's Cash Collateral*

1. Debtor is a limited liability company organized under the laws of Puerto Rico, which operates as a private equity fund.

2. Brevet is the Debtor's largest secured creditor, having maintained a multi-year lending relationship with the Debtor.

3. On August 18, 2021, Debtor and certain of its non-debtor affiliates entered into a loan and security agreement with Brevet (as amended, restated, supplemented, or otherwise modified from time to time, the "Loan and Security Agreement"). Pursuant to the Loan and Security Agreement, Brevet was granted a first-priority security interest in and lien upon all of the assets of Debtor to secure all obligations owing by the loan parties to Brevet (the "Obligations").

4. The security interests granted in favor of Brevet under the Loan and Security Agreement were perfected through the filing of the following:

    a. UCC-1 Financing Statement with filing number 20210009875 duly registered in the Puerto Rico Department of State on August 23, 2021, a copy of which is attached hereto as **Exhibit 1**; and

b. Deposit Account Control Agreement dated September 1, 2021 between the Debtor, Brevet and Banco Popular de Puerto Rico, in respect to the Debtor's operating account ending *3453 and revenue account ending *5509.

5. On March 5, 2026, Debtor filed its schedules and statements regarding its assets and liabilities signed by Francisco J. Rivera (the "Schedules and Statements").  In the Schedules and Statements, Debtor has acknowledged on the record that Brevet has a secured claim.[2]

6. In addition to the foregoing, Brevet and the Debtor have entered into various other agreements that further evidence and support the validity and extent of Brevet's secured claim against the Debtor's estate.

7. Accordingly, Brevet has a senior secured perfected lien over all of the assets of the Debtor including all deposit accounts, cash, cash equivalents and proceeds (collectively, the "Cash Collateral").

*(b) Debtor's Chapter 11 Case*

8. On February 23, 2026, Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  To date, the Debtor has not filed any traditional "first day" motions in this chapter 11 case.  The meeting of creditors pursuant to 11 U.S.C. § 341 is scheduled for March 30, 2026, and a status conference is scheduled for May 19, 2026.

9. On June 16, 2025, Driven was initially appointed as the receiver over the Debtor pursuant to that certain Complaint and Order of (i) Cease and Desist, (ii) Appointment of Receiver and (iii) Levying of Administrative Fines. Such appointment was placed in abeyance due to the agreement of the Debtor to enter into a Consent Order of (i) Special Examination and Appointment of Examiner and (ii) Additional Actions with the Office of the Commissioner of Financial Institutions of Puerto Rico (the "OCIF") on June 25, 2025 (the "Consent Order").  Finally, due to non-compliance of the Debtor with the Consent Order, among other reasons, OCIF issued on

---

[2] Brevet reserves all rights to file a proof of claim in respect to the true value of its secured claim and seek any other relief.

February 18, 2026, an Amended Complaint and Order of (i) Cease and Desist, (ii) Liquidation of the Private Equity Fund, (iii) Appointment of Interim and Permanent Receiver to Execute the Liquidation re-appointing Driven as receiver of the Debtor.

10.     On March 11, 2026, this Court entered its *Opinion and Order* [Docket No. 33] finding that Driven may act as debtor-in-possession.

11.     On March 17, 2026, the 9019 Motion was filed jointly by Driven as the acting debtor in possession on behalf of the Debtor, Blue Sky Group, LLC ("BSG"), and José Maldonado Ortiz ("JMO") seeking approval from this Court of the Settlement Agreement which settles and releases claims relating to that certain MIPA Agreement between the Debtor, BSG and JMO in return for BSG making a settlement payment of $2,100,000 (Two Million One Hundred Thousand United States Dollars) (the "Payment").  The Debtor states that the "Payment is critical to provide initial liquidity to the debtor-in-possession and estate, considering the financial situation and lack of liquidity in The Phoenix Fund…." *See* 9019 Mot., Preliminary Statement.

12.     On March 20, 2026, the OCIF conducted a hearing to obtain an order confirming the permanent appointment of Driven as receiver of the Debtor, which request remains pending.

13.     As of the date of this Limited Objection, no committee of unsecured creditors, trustee, or examiner has been appointed in this chapter 11 case.

**OBJECTION AND REQUEST FOR ADEQUATE PROTECTION**

14.     By this Limited Objection, Brevet does not object to the Settlement Agreement or an entry of an order by this Court approving the Settlement Agreement.  Instead, Brevet objects to the use of Brevet's Cash Collateral to fund this chapter 11 case in violation of the Bankruptcy Code.  Brevet further respectfully moves this Court for an order prohibiting the Debtor from using Brevet's Cash Collateral without Brevet's prior written consent or a court order obtained upon a properly noticed motion supported by an evidentiary record supporting such use, if such evidence

4

can be adduced, and if so, supported by adequate protection of Brevet's interest in its Cash Collateral.

## LEGAL ARGUMENT

I.   **The Payment is Brevet's Cash Collateral, The Use Of Which Is Prohibited Absent Brevet's Consent or a Court Order.**

A.  **The Payment Constitutes Cash Collateral Subject to Brevet's Senior Perfected Liens.**

15.   Section 363 of the Bankruptcy Code governs the use of estate property, including cash collateral. 11 U.S.C. § 363. Upon the Debtor's filing for bankruptcy, all of the Debtor's cash, cash equivalent, proceeds and other collateral securing its Obligations to Brevet became "cash collateral" within the meaning of Section 363(a) of the Bankruptcy Code. *See* 11 U.S.C. § 363(a). Section 363(a) defines "cash collateral" to include:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

16.   The Payment and any other cash held or hereafter received by the Debtor constitute property of the Debtor's estate in which Brevet holds a first priority perfected security interest encompassing all cash and proceeds from all personal property of the Debtor. Because the Payment is cash in which both the estate and Brevet hold an interest, it constitutes "cash collateral" within the meaning of 11 U.S.C. § 363(a).

17.   Section 552(b)(1) of the Bankruptcy Code further supports this conclusion, establishing that if a prepetition security agreement creates a security interest in property of the

5

debtor and in the proceeds, products, offspring, rents, or profits of such property, then the security interest extends to post-petition proceeds, products, offspring, rents, or profits of the same property. 11 U.S.C. § 552(b)(1). Here, under the Loan and Security Agreement, the Debtor granted Brevet a security interest in all post-petition proceeds, specifically, Section 4 provides:

> Each Grantor hereby grants and pledges to the Agent, on behalf of the Lenders, a continuing first priority security interest in the Collateral now existing or hereafter acquired to secure prompt repayment of each Term Loan and all other Obligations and amounts outstanding owing pursuant to the terms of this Loan Agreement and to secure prompt performance by the Borrowers of each of their respective covenants and duties under this Loan Agreement.

Section 1(b) includes the following within the definition of "Collateral":

> (aa) all other personal property of any kind or type whatsoever now or hereafter owned by the Loan Parties or as to which the Loan Parties now or hereafter have the power to transfer its interests therein; (ab) all Accessions and all Proceeds and products of any and all of the foregoing; and (ac) all cash proceeds, accounts receivable, notes, drafts, acceptances, insurance proceeds, condemnation awards, rights to payment of any and every kind, and other forms of obligations and receivables which at any time constitute all or part or are included in the proceeds of any of the foregoing.

18. The Payment represents the proceeds of a prepetition contractual claim that the Debtor has settled post-petition. Because Brevet holds an all-asset lien, the underlying prepetition contractual claim falls within the scope of Brevet's collateral, and under Section 552(b)(1) of the Bankruptcy Code, Brevet has a post-petition security interest in the Payment as proceeds of the prepetition contractual claim held by the Debtor. Accordingly, regardless of whether the Payment is characterized as "cash" or "proceeds" under the statutory definition of "cash collateral" set forth in Section 363(a) of the Bankruptcy Code, the Payment constitutes Cash Collateral in which Brevet holds a valid and perfected security interest.

**B. The Debtor May Not Use Brevet's Cash Collateral Without Court Authorization or Brevet's Consent, Neither of Which Has Been Obtained.**

19. Section 363(c)(2) of the Bankruptcy Code is unequivocal: a debtor-in-possession may not use cash collateral unless it either (a) obtains the consent of each entity with an interest in such cash collateral, or (b) obtains court authorization "after notice and a hearing." 11 U.S.C. § 363(c)(2). This requirement is a fundamental protection that Congress created to safeguard the rights of secured creditors whose collateral is at risk of dissipation during a bankruptcy case. *See In re Karamoussayan*, 656 B.R. 652, 663 (B.A.P. 1st Cir. 2024) (holding that the provisions within section 363(c) "recognize the unique nature of cash collateral, and the risk to the entity with an interest in such collateral, arising from the dissipation or consumption of the collateral in a rehabilitative effort in bankruptcy") (internal quotation and citation omitted); *In re Three Partners*, 199 B.R. 230, 236 (Bankr. D. Mass. 1995) ("[D]ue to the unique nature of cash collateral, specific protections should apply to prevent its dissipation, leaving the court and the entity with an interest therein with a *fait accompli*") (internal quotation and citation omitted). The burden of compliance rests squarely on the Debtor. *In re Nat'l Promoters & Servs., Inc.*, 499 B.R. 192, 208 (Bankr. D.P.R. 2013) ("It is well settled that the debtor bears the burden to demonstrate that a creditor is adequately protected") (internal quotation and citation omitted).

20. The Debtor has not satisfied either condition. The Debtor has not sought, and Brevet has not provided, consent for use of the Cash Collateral. Nor has the Debtor sought or obtained prior Court authorization under Section 363(c)(2) of the Bankruptcy Code. Instead, through the 9019 Motion, the Debtor seeks to unilaterally retain the Payment to "provide initial liquidity to the debtor-in-possession and estate" — a purpose that benefits the Debtor's estate at the direct expense of Brevet's secured position without providing adequate protection. *See* 9019 Mot., Preliminary Statement. This is precisely the conduct that Section 363(c)(2) was designed to prevent.

7

21. The 9019 Motion cannot serve as a vehicle to circumvent the requirements of Section 363(c)(2) of the Bankruptcy Code. The Debtor's attempt to retain and use the Payment to fund this chapter 11 case through the 9019 Motion — rather than through a properly noticed cash collateral motion that affords Brevet the procedural protections to which it is entitled — is precisely the type of end-run around the Bankruptcy Code's secured creditor protections that courts have consistently refused to countenance. *In re Three Partners*, 199 B.R. at 237 (holding that "[d]ebtor's failure to obtain the express consent of the [secured lender] for the use of cash collateral violated § 363(c)(2)(A)"); *see also In re Krisle*, 54 B.R. 330, 341 (Bankr. D.S.D. 1985) (holding that debtor's unauthorized use of cash collateral violated the Bankruptcy Code regardless of debtor's need for cash collateral for business operations and a showing of adequate protection). A debtor-in-possession stands in a fiduciary capacity with respect to its creditors and is obligated to comply with the requirements of the Bankruptcy Code; it may not selectively invoke the Bankruptcy Code's protections while disregarding its obligations.

### C. This Court Should Prohibit the Debtor from Using the Cash Collateral.

22. Brevet respectfully requests that this Court enter an order prohibiting the use of Brevet's Cash Collateral by the Debtor without Brevet's consent. Section 363(e) of the Bankruptcy Code provides that, upon the request of an entity with an interest in cash collateral, the court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The directive is mandatory, not discretionary. The Debtor has made no provision whatsoever for the adequate protection of Brevet's interest — no replacement liens, no periodic payments, no segregation of funds. This Court is therefore required to act upon Brevet's request to prohibit the use of its Cash Collateral. *See* 11 U.S.C. §363(e).

**II.    This Court Should Order Adequate Protection to Safeguard Brevet's Interest in the Cash Collateral at a Properly Noticed Hearing.**

23.    If this Court were to permit the Debtor to use Brevet's Cash Collateral — which Brevet submits it cannot on this record and should not — Brevet hereby requests that the Debtor meet its burden of establishing that Brevet is adequately protected for any proposed use of its Cash Collateral at a properly noticed hearing as required by Section 363(e) of the Bankruptcy Code.

24.    Under Sections 362 and 363 of the Bankruptcy Code, a secured lender is entitled to be "adequately protected" from any erosion in the value of its collateral. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370 (1988) ("It is common ground that ... a secured creditor's interest is not adequately protected if the security is depreciating during the [Chapter 11 reorganization]."); *see also In re Martin*, 761 F.2d 472, 474-77 (8th Cir. 1985) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 53) (adequate protection should "as nearly as possible" provide secured lender with bargained-for rights).  This protection is a statutory mandate that this Court is required to enforce upon Brevet's request.  The Debtor has not offered Brevet any adequate protection. *See* 11 U.S.C. § 363(p); *In re Nat'l Promoters & Servs.*, 499 B.R. at 208 ("It is well settled that the debtor bears the burden to demonstrate that a creditor is adequately protected") (internal citation and quotation omitted).

25.    The Bankruptcy Code does not define "adequate protection" with precision, recognizing that the appropriate form of protection must be tailored to the circumstances of each case. *See In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) ("The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361.").  Courts assess the adequacy of any proposed protection on a case-by-case basis, with the overriding objective of ensuring that the secured creditor's economic position is not eroded by the debtor's use of collateral during the pendency of

9

the bankruptcy case. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994). What is abundantly clear is that no protection is insufficient for purposes of Section 363(e) of the Bankruptcy Code.

## **CONCLUSION**

The Payment constitutes Brevet's Cash Collateral, and the Debtor has no right to use Brevet's Cash Collateral. It has neither obtained Brevet's consent nor sought court authorization through the procedurally proper mechanism required by Section 363(c)(2) of the Bankruptcy Code. Brevet holds a senior perfected security interest in the Payment which may not be retained by the Debtor's estate for its own use without Brevet's consent, an order of this Court or sufficient adequate protection. The Debtor has not offered or provided any form of adequate protection for its use of the Cash Collateral during this chapter 11 case, and Brevet explicitly withholds its consent to any such use of Cash Collateral. Due process alone requires that the Debtor seek approval and consent for the use of cash collateral.

**WHEREFORE**, Brevet respectfully requests that the Court enter an order:

a) prohibiting the use of Brevet's Cash Collateral by the Debtor without Brevet's consent; and

b) granting such other and further relief as this Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: March 24, 2026

San Juan, Puerto Rico

Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ Margarita Mercado Echegaray*
Margarita Mercado Echegaray (USDC-PR No. 228901)
Sonia Torres (USDC-PR No. 209310)
**DLA Piper (Puerto Rico) LLC**
B7 Tabonuco Street, Suite 1501
Guaynabo, Puerto Rico 00968-3349
Telephone: (787) 945-9122
Email: margarita.mercado@us.dlapiper.com
          sonia.torres@us.dlapiper.com

- and –

Jamila Justine Willis (*pro hac vice* admission pending)
Malithi P. Fernando (*pro hac vice* admission pending)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: jamila.willis@us.dlapiper.com
          malithi.fernando@us.dlapiper.com

*Counsel to FCS Advisors, LLC d/b/a Brevet
Capital Advisors*

11

## CERTIFICATE OF SERVICE

I, Margarita Mercado Echegaray, hereby certify that on March 24, 2026, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case, including, but not limited to the Debtor's counsel, JMO, BSG and the U.S. Trustee.  Copy of this Limited Objection will be sent by regular mail upon all parties listed in the Mailing Matrix of the instant bankruptcy proceeding.

/s/ Margarita Mercado Echegaray
Margarita Mercado Echegaray
(USDC-PR No. 228901)