**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

In re:

THE PHOENIX FUND LLC

Debtor

Case No. 26-00712 (ESL)

Chapter 11

**DRIVEN, P.S.C.'S RECEIVER AND DEBTOR-IN-POSSESSION REPORT
IN COMPLIANCE WITH THE BANKRUPTCY COURT'S
OPINION AND ORDER DATED MARCH 11, 2026**

TO THE HONORABLE ENRIQUE S. LAMOUTTE
UNITED STATES BANKRUPTCY JUDGE:

**COMES NOW** Driven, P.S.C. ("Driven" or the "Receiver"), as appointed receiver pursuant to the *Amended Complaint and Receiver Order* (the "Complaint and Receiver Order")[1] and entity authorized to act for the Debtor-in-Possession, by and through its undersigned attorneys, and hereby submits this report (the "Report") and the *Receiver's 21-Day Status Report and Proposed Plan of Action* attached as **Exhibit A** (the "Receiver Status Report") in compliance with this Court's opinion and order (the "Opinion") dated March 11, 2026 (ECF No. 33) directing the Receiver to inform how it intends to proceed in the captioned case.

**Statement on Proposed Course of Action**

As detailed below, since the entry of the Opinion, the Receiver has undertaken numerous tasks to comply with the Complaint and Receiver Order and the Opinion. These tasks are detailed below. The Receiver has also been analyzing the best path – either through a bankruptcy case or through a dismissal - to achieve a liquidation of the Fund, as ordered through the Complaint and Receiver Order. The Receiver understands that the entry of the Opinion deems the bankruptcy

---

[1] On February 18, 2026, the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF") issued the Complaint and Receiver Order whereby Driven was appointed as receiver of The Phoenix Fund, LLC (the "Fund"), with, *inter alia*, authority to act as debtor-in-possession in any bankruptcy proceeding.

1

filing made by the Fund's pre-petition officers to be an unauthorized filing, as the Receiver was correctly determined to be the entity authorized to commence a bankruptcy case for the Fund. While the Receiver understands that a bankruptcy case will likely provide the best forum to achieve the ordered liquidation of the Fund, there are several pending obstacles and decisions that need to be adjudicated or resolved and that may ultimately make continuing in bankruptcy feasible or not. Thus, the Receiver, for the reasons detailed below, deems that additional time is needed for the Receiver to be in a position to ratify this bankruptcy case or move to dismiss, and request approval of such proposed course of action from the Court.

First, as detailed in the OCIF Motions[2], part of the regulatory defaults that caused OCIF to commence the Enforcement Action against the Fund was because the Fund did not have– and still does not have– adequate and current financial statements and financial records. As an example, the last audited financial statement for the Fund was for the year 2021; further, the Fund failed to provide, for years, the legally required quarterly financial reports to OCIF or to its investors and it did not allow the Receiver to conclude an examination of the Fund's assets and liabilities. The lack of adequate financial records is evident even from the Fund's purported prior management (the "Fund Prior Management")[3] filings, which show an unexplained and substantial difference from the value of assets and amount of liabilities reported in the voluntary petition filed on February 23,

---

[2] As to context, the regulatory background and enforcement actions against the Fund, and the Fund's efforts to prevent such actions by, among other things, filing this bankruptcy case, have been detailed by the OCIF as part of its *Motion For Entry Of Order To Continue OCIF's Enforcement Action Or, In The Alternative For Relief From The Automatic Stay* (the "Motion to Continue Enforcement Action") and the *Urgent Motion For Order Recognizing Authority Of The Pre-Petition Receiver, Driven, P.S.C., To Act On Behalf Of Debtor-In-Possession* (the "Urgent Motion" and together with the Motion to Continue Enforcement Action, the "OCIF Motions") (ECF Nos. 13, 14). The OCIF Motions were granted by the Court through the Opinion.

[3] The Receiver is conscious that the Court entered an order to show cause as to the entity authorized to act on behalf of the Fund. The Receiver understands that this order refers to authority to act on behalf of the Fund and not on behalf of the Debtor in Possession or the Estate, as that entity has been determined, correctly, to be the Receiver. The Receiver will state its position as requested by the Fund and is not addressing this as part of this Report.

2026 *vis-à-vis* what was reported on the schedules filed just two weeks later, on March 5, 2026.[4] This highlights the need to develop independent, accurate and current financial data for the Fund and understand the value of the Fund's assets and its obligations. Further, the Receiver – as detailed below – has taken substantial steps to obtain control and possession over the Fund's assets and financial records. Nonetheless, the Receiver anticipates that it will seek, shortly, further relief from the Court, including requests for examination and production of documents under Bankruptcy Rule 2004. Having control and access to all of the Fund's financial records and assets and independently analyzing the value of its assets and liabilities is an important and critical step for the Receiver to assess the best path towards a liquidation.

Second, the Opinion is subject to an appeal filed by a statutory insider and affiliate, The Phoenix Fund Advisor, LLC (the "Advisor"), a related motion to stay pending appeal, and a separate motion for reconsideration filed by the Fund Prior Management. Although the Receiver is confident that strong grounds exist to promptly deny the motion for reconsideration, the motion to stay pending appeal, and to ultimately dismiss the appeal, resolution of the motion for reconsideration and the motion to stay pending appeal are critical to provide certainty to the bankruptcy estate (the "Estate"), creditors, and parties in interest of the binding effect of OCIF's Complaint and Receiver Order and thus of the Receiver's role and authority as debtor-in-possession, and to provide a path forward in the Receiver's liquidation efforts, whether in the bankruptcy forum or not.

Finally, but critically important, while the Receiver, at this stage, is inclined, once the Court's adjudicates the motion for reconsideration and the motion to stay pending appeal, to ratify

---

[4] See, for example, Docket No. 1, p. 7, listing $565,903,423.00 as total assets and $400,867,404.60 in liabilities and compare with Docket No. 31, listing $660,528,773.14 in assets and $512,998,877.65 in liabilities.

the bankruptcy filing and request approval from the Court for such ratification, this decision rests on several factors that may prevent a path forward in bankruptcy and may ultimately require the Receiver to seek the dismissal of this case. Among these factors, the Receiver needs to obtain liquidity to fund a liquidation– as the Fund initiated the captioned case with $72.19 in cash in its accounts (ECF No. 31, p. 5, *Item 3*)–needs to obtain approval for all constituents of its professional team, and needs to navigate a bankruptcy filing, reporting requirements, and compliance with the U.S. Trustee ("UST") for a case that the Receiver did not file and as to which the Fund's financial information, books and records are clearly deficient. Time is needed to navigate these issues.

In sum, while the Receiver has taken numerous steps to address these issues and be able to properly consider a liquidation within the bankruptcy forum, these obstacles may ultimately require the Receiver to seek the dismissal of this case and proceed with the liquidation outside of it. To be clear – regardless of whether the liquidation proceeds within the bankruptcy forum or outside – the Receiver has and will continue to take all steps necessary to ensure that it complies with its obligations under the Complaint and Receiver Order and the Opinion, including requesting any and all legal remedies necessary to obtain control and possession over the Fund's assets and to commence, as appropriate, the monetization, administration, and liquidation of the Fund. In other words, the Receiver does not intend to halt or defer in any matter its actions to assert, prosecute, or pursue any of its rights, claims, or compliance with any of its obligations under the Complaint and Receiver Order and the Opinion. Further, while the bankruptcy case continues, the Receiver will continue to comply with the Estate's duties, responsibilities and requirements in this case to protect and preserve the value of the Estate for the benefit of all creditors and investors. Thus, the Receiver respectfully requests that the Court allow it until the filing of the status report in connection with the May 19, 2026 status conference, to further address its position on whether

it will request that the OCIF-ordered liquidation continue in the bankruptcy forum or if it will request a dismissal of the case.

Having stated the foregoing, the Receiver hereby reports as follows:

**Background**

1. On February 23, 2026 (the "Petition Date"), the Fund filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. See, Docket No. 1.

2. Other than the Receiver, no bankruptcy trustee, examiner, or official committee has been appointed in this chapter 11 case.

3. On March 11, 2026, the Court issued the Opinion, concluding that the Receiver is "the entity vested with authority to file a bankruptcy petition on behalf of the Fund and act as debtor-in-possession therein." See Docket No. 33, pg. 11. The Court also held that the automatic stay is inapplicable to the Enforcement Action (as defined therein), "including the enforcement of the Amended Complaint and Receiver Order, the Consent Order, and the appointment of Driven, P.S.C., as Receiver with authority act as debtor-in-possession." Id. Finally, the Court required the Receiver to submit a report on how it intends to proceed with this case by today. Id.

4. Through this Report and the Receiver Status Report, the Receiver informs and provides a status report to the Court, creditor, and parties in interest.

A. **Introduction of Driven as Receiver.**

5. As detailed in the Receiver's *Firm Profile &* Qualifications (the "Profile") attached hereto as **Exhibit B**, Driven is a full-service business advisory and certified public accounting firm with an experienced team of professionals dedicated to helping businesses navigate complex financial, management, and operational challenges.

5

6.      As detailed in the Profile, Driven has extensive experience in receiverships and liquidations and in private equity funds such as the Fund. The Profile provides an overview of Driven and its capabilities and experience in areas more relevant to the tasks and role of the Receiver herein.

**B. Status of OCIF Enforcement Action.**

7.      Following the issuance of the Opinion, on March 12, 2026, OCIF requested the scheduling of the final hearing on the Enforcement Action.

8.      The final hearing on the Enforcement Action was scheduled for March 20, 2026.

9.      On the night immediately before the scheduled hearing, at approximately 10:00pm, the Advisor, for the first time in an Enforcement Action that had been pending for nine (9) months, filed a motion to intervene and to dismiss the Enforcement Action (the "Advisor Motion").

10.     The final hearing was held as scheduled on March 20, 2026. Notwithstanding the filing of the Advisor Motion, and the request for reconsideration purportedly filed by the Fund Prior Management in this Bankruptcy Case, neither the Advisor nor the Fund Prior Management, nor any of their attorneys or representatives appeared at the final hearing on the Enforcement Action nor did they raise any objection therein.

11.     The Receiver appeared at the final hearing as well as other creditors and parties-in-interest. During the hearing, OCIF presented its case and verbally responded to the Advisor Motion. The presiding examining official for the Enforcement Action directed OCIF to file a written response to the Advisor Motion, which OCIF filed on March 30, 2026.

12.     As a result, as of today, the Receiver understands that the Enforcement Action and the request to appoint the Receiver on a permanent basis is pending adjudication from the presiding

6

examining official therein. The Receiver will inform the Court of any such decision and order once entered.

### C.  **The Receiver's Actions Since the Issuance of the Opinion.**

13.     Since the issuance of the Opinion, the Receiver has taken several actions to comply with the Complaint and Receiver Order and the duties of the Receiver therein and with the Opinion. These actions are detailed in the Receiver Status Report attached as **Exhibit A**, and are summarized herein:

#### i.  *Actions to Take Control*

14.     Following the issuance of the Opinion, on March 13, 2026, the Receiver's team arrived at the Fund's office premises located at Villa Caparra 243, PR State Road No. 2, Guaynabo, Puerto Rico.

15.     The Receiver has attempted, when possible, to resolve access matters consensually with the Fund Prior Management and its counsel without involving the Court. Nonetheless, access to the Fund's property has been on a piecemeal basis and is a process that has not concluded and may require the Receiver to seek relief from the Court.

16.     Specifically, the Receiver obtained, shortly after entry of the Opinion, access to the Fund's server. The Fund Prior Management has represented to the Receiver that the Fund has no physical assets, and that all of its information and documents are allegedly within such server.

17.     As the Receiver started to review the documents in the server, the Receiver discovered that there are additional documents in other software platforms for which access was not granted until March 30, 2026. Notwithstanding prior requests and demands, at that time the Receiver was provided with credentials and login information for operational systems of the Fund, such as Quickbooks, wherein the Fund manages its accounting and books and records, a cloud-

based platform called MS365 and an investment management platform called Allvue. Further, on that date, the Receiver was provided access to physical files of the Fund that the Receiver discovered. The Receiver is in the process of validating whether such credentials and login information provide access to these software platforms and resolving issues with the software companies to ensure such access. If any access issues remain after such investigation, the Receiver may be forced to seek relief from the Court.

18. Further, the Receiver has requested, from the financial institutions directly, access to all of the Fund's bank accounts, information regarding such accounts, and to change the signatories therein. This process is ongoing and should be completed shortly.

19. The Receiver has also opened debtor-in-possession accounts (the "Receiver DIP Account") at Banco Popular de Puerto Rico. Evidence of the opening of the Receiver DIP Account was sent to the UST on March 30, 2026.

20. Finally, the Receiver intends to seek further relief to ensure that the Fund and related parties comply with the Complaint and Receiver Order and that the Receiver has full access to all of the Fund's property, documents and assets and to also ensure that the Receiver has complete documents for each of the Fund's investments, obligations, and relationships. As a result, the Receiver intends to seek further relief from the Court, including filing, shortly, requests for Bankruptcy Rule 2004 examinations. The Receiver anticipates seeking this relief on or before the next seven (7) days.

### ii. Actions to Obtain Liquidity.

21. To date, despite having been faced with a bankruptcy petition that disclosed only $72.19 in cash across three (3) separate bank accounts, the Receiver has been able to identify approximately $3,284,794.52 in potential sources of liquidity for the Estate, detailed as follows:

### a. The Blue Sky Transaction

22. On March 17, 2026, the Receiver filed with Blue Sky Group, LLC and José Maldonado Ortiz ("BSG" and "JMO") a motion (the "BSG 9019 Motion") for the approval of an agreement (the "BSG Settlement Agreement") that sought to resolve any and all causes of action between the Estate and such entities in connection with a certain Membership Interest Purchase Agreement ("MIPA"). See, Docket No. 38.

23. The BSG 9019 Motion was approved by the Court on March 27, 2026. See, Docket No. 71.

24. Through the BSG Settlement Agreement, among other benefits, BSG and JMO paid to the Receiver (subject to the limitations on any use therein set forth in the Court's order approving the BSG 9019 Motion) $2.1 Million (the "Settlement Payment").

25. As detailed in a limited objection filed by FCS Advisor, LLC *d/b/a* Brevet Capital Advisors ("Brevet") to the BSG 9019 Motion, Brevet asserts that the Settlement Payment is part of its cash collateral.

26. The Receiver has commenced discussions with Brevet regarding the potential consensual use of any such cash collateral and to request from Brevet the loan documents so that the Receiver can assess such liens, their extent and priority. Discussions are at a preliminary stage and the Receiver, because it has not yet received such loan documents or analyzed Brevet's liens, reserves all rights and claims in connection therewith.

27. Nonetheless, the Settlement Payment, either through a consensual use of cash collateral or through other relief from the Court, provides a potential source of liquidity to begin to fund the ordered liquidation of the Fund and the plan of action detailed in the Receiver Status Report.

### b. *UNICO Funds*

28.     On March 24, 2026, Universal Insurance Company ("UNICO") filed a motion (which the Court has granted) for leave to consign the amount of $554,794.52 (the "UNICO Funds") owed in connection with interest payments due under a certain Surplus Note Purchase Agreement. See, Docket Nos. 47, 66.

29.     The Receiver is aware that on March 31, 2026, Acrecent Financial requested that the UNICO Funds be disbursed to them. See, Docket No. 88. The Receiver is currently analyzing the transaction and documents with UNICO and Acrecent's rights thereto, so that it can respond to and seek appropriate relief from the Court, as warranted and before the deadline to respond to Acrecent's motion.

### c. *Unauthorized Retainer Payments*

30.     As the Court is aware, the Receiver has requested the return of **(i)** certain retainer amounts (specifically, $450,000.00) paid from Estate funds to professionals that the Debtor-in-Possession did not have authorization to retain in the captioned case pursuant to 11 U.S.C. §327 and **(ii)** the amount of $180,000.00 paid by the Fund to Pariter Securities, LLC (a statutory insider and affiliate of the Fund) on February 19, 2026 (*i.e.*, a day after the issuance of the Complaint and Receiver Order). See, Docket Nos. 29, 37, 57.

### d. *Restricted Deposits*

31.     The Receiver has reached out to financial institutions Popular Fiduciary Services and Oriental Bank, in connection with the restricted deposit amounts listed in Item 77 of the Fund's *Schedule A/B* (ECF No. 31, p. 15) and has requested information from such financial institutions to understand the restrictions imposed on those deposits. The Receiver has commenced to receive information from such financial institutions. This process is ongoing.

### iii. Actions to Enforce Automatic Stay

32.     Following the issuance of the Opinion, the Receiver became aware that the Fund Prior Management had not informed the relevant courts wherein the litigations against the Fund prior to the Petition Date were pending of the filing of the captioned case, and that some of those litigations had upcoming hearings scheduled.

33.     Thus, to protect the Estate, the Receiver (with the exception of the Foreign Proceeding case listed below) has filed a notice of stay in the corresponding courts and parties of the pendency of the captioned case in the following litigations[5]:

### (a) Court of First Instance, Puerto Rico

1) Rojas Nieves BPJ LLC v. Phoenix Universal Capital I LLC / TPF (BY2024CV00263)
2) Biggs, LLC et al. v. The Phoenix Fund LLC et al. (BY2022CV05894)
3) José Aníbal Rojas Rivera et al. v. TPF / Sunshine Holdings / Phoenix Sunshine (BY2024CV00269)
4) Tomás E. Colón Millán v. Dorado Health Group / TPF (SJ2024CV11494/ SJ2024CV04674 – Consolidated)
5) Tropigas de Puerto Rico Inc. v. TPF / Phoenix TC WHSE (BY2024CV03559)
6) Madison RE I, LLC v. Phoenix Universal Capital I / TPF (BY2025CV01872)
7) Novus, Inc. v. TPF / Phoenix TC WHSE (BY2025CV03834)
8) Axis Holdings, LLC v. TPF / Phoenix TC WHSE (BY2025CV04209)
9) José A. Casal v. TPF (BY2026CV00104)
10) Luis Aymat Rivera et al. v. TPF (GB2025CV01013)

---

[5] Should the Receiver become aware of any other pending litigation, it will promptly seek the stay thereof in the appropriate forum and so inform the Court.

**(b) Supreme Court of New York**

1) AG Super Fund Master LP et al. v. The Phoenix Fund LLC et al. (Index No. 655931/2025) (Supreme Court of New York, Commercial Division – Filed October 3, 2025)

**(c) United States District Court for the District of Puerto Rico**

1) Zenus Fund LLC v. The Phoenix Fund LLC et al. (Civil No. 25-01356 (GMM))

**(d) Foreign Proceedings**

1) Soltec Partners LATAM S.R.L. v. TPF (Case No. 24-000134-1623-CI-8 – Costa Rica) – This case is pending before the Court of First Instance in Costa Rica, and the Receiver is finalizing efforts to be allowed to make a filing therein to provide notice of the captioned case.

### iv.  Compliance with Duties and Requirements

34.    On March 16, 2026, counsel for the Receiver reached out to the UST to seek a short continuance of the 341 Meeting, which the UST was unable to grant given the 40-day period to hold the same.

35.    On March 23, 2026, the Receiver filed its *Nunc Pro Tunc Application of the Receiver, As the Authorized Representative for the Debtor-In-Possession, for Order Authorizing the Retention and Employment of Marini Pietrantoni Muñiz LLC as General Bankruptcy and Litigation Counsel* (the "Receiver Counsel Application"). See, Docket No. 42.

36.    The Receiver Counsel Application was granted on March 27, 2026. See, Docket No. 72.

37.    On March 23, 2026, because it had not been granted access to the Fund's bank accounts, the Receiver also sought an extension of time to file the February 2026 monthly operating report and to serve the required notice to creditors scheduled as disputed, contingent or

12

unliquidated pursuant to L.B.R. 1007-1(f). See, Docket No. 43. The Court granted that request on March 25, 2026. See, Docket No. 51.

38. On March 24, 2026, the Receiver filed its motion in compliance with P.R. L.B.R. 4002-1(d), designating Mr. Ryan Marín ("Mr. Marín") as person to act on behalf of the Receiver as debtor-in-possession in the captioned case. See, Docket No. 49.

39. On March 26, 2026, the Receiver filed its preliminary financial reports pursuant to Fed. R. Bankr. Proc. 2015.3 (the "Bankruptcy Rule 2015.3 Financial Reports") based on the information that it had as of that date. See, Docket No. 64.

40. On March 27, 2026, the Receiver filed its *Nunc Pro Tunc Application of the Receiver, As the Authorized Representative for the Debtor-In-Possession, for Order Authorizing the Retention and Employment of BDO Consulting LLC as Financial Advisor.* See, Docket No. 69.

41. On March 30, 2026, the Receiver, through Mr. Marín, appeared at the 341 Meeting and provided testimony in connection with the inquiries that the UST had, with Mr. Marín further making himself available for any inquiries that creditors may have had.

42. The Receiver requested a timeframe of seven (7) days from the date on which this Court adjudicates the Fund Prior Management's motion for reconsideration (ECF No. 54) of the Opinion filed on March 25, 2026, to file amended schedules and statements reflecting the information that the Receiver has at this juncture (and will have at that date). The 341 Meeting was therefore continued *sine die*.

43. During the 341 Meeting, the Receiver advanced that it intended to seek an order establishing compensation procedures in the captioned case by which, *inter alia*, it would propose that, in addition to the compensation of its professionals, the Receiver's compensation in the

captioned case also be subject to 11 U.S.C. §§ 330 and 331, allowing parties-in-interest the opportunity to state their respective positions, if any, to the Receiver's compensation.

44.    The Receiver intends to file the motion to establish these compensation procedures on or before the next seven (7) days.

45.    Further, the Receiver is already working on its amendments to the Schedules of Assets and Liabilities, which it intends to submit within the timeframe request from the US Trustee.

46.    Moreover, the Receiver continues its efforts to reconstruct the Fund's affairs for the purpose of making any necessary amendments to the creditor matrix list, schedules and statements, forthcoming monthly operating reports and other reporting requirements.

**D.  <u>Actions with Creditors / Prior Fund Management</u>.**

47.    The Receiver has also been engaging in communications with all banking institutions in which the Fund had or has bank accounts[6] to properly evaluate the activity of the Fund and analyze the assets of the Estate, as well as potential claims.

48.    The Receiver has also been reaching out to several vendors of the Fund to be able to gain access to the IT systems allegedly containing digital books and records of the Fund, investor communication platforms and other bookkeeping platforms of the Fund to be able to properly ascertain the financial condition thereof. As mentioned above, it was not until March 30, 2026, that the Fund Prior Management sent credentials and login information for the Fund's platforms, and the Receiver is still evaluating what information it will retrieve therefrom.

---

[6]  As of the date of this Report, the Receiver has communicated with Banco Popular de Puerto Rico, Oriental Bank, First Bank and Banesco regarding requests for changes in management authority in connection with any interests in property that the Fund may have– or may have had– held in such institutions.

49.     The Receiver has also been in contact with the Fund's auditing firm, RSM Puerto Rico, and understands that the audited financial statements for 2022 were in the final stages but were not provided to the Fund for lack of payment. The Receiver intends to continue these communications to obtain any independently evaluated financial information of the Fund it deems appropriate to provide a more accurate financial reporting in the captioned case.

50.     The Receiver has begun investigating the Fund's transactions and agreements with affiliates, and advances that the Receiver intends to move to reject the Fund's agreement with the Advisor, as it understands such agreement provides no benefit to the estate. The Receiver will continue reviewing the Fund's transactions and agreement and to seek relief as appropriate.

### E. **Proposed Course of Action**.

51.     The Receiver's proposed course of action to commence this liquidation is detailed on **Exhibit A**. The steps and actions contemplated therein are geared towards a liquidation through ratification of this bankruptcy case. Nonetheless, as detailed above, the Receiver intends to supplement this as part of the status report to be filed in connection with the May 19, 2026 status conference, including to supplement its position on whether the ordered-liquidation should be conducted as part of a bankruptcy case or whether the bankruptcy case should be dismissed and the liquidation conducted under Puerto Rico law.

52.     To be clear, as advanced above and regardless of whether the liquidation proceeds within the bankruptcy forum or outside, the Receiver has and will continue to take all steps necessary to ensure that it can comply with its obligations under the Complaint and Receiver Order and the Opinion, including requesting any and all legal remedies necessary to obtain control and possession over the Fund's assets and to commence, as appropriate, the monetization, administration, and liquidation of the Fund.  In other words, the Receiver does not intend to halt

or defer in any matter its actions to assert, prosecute, or pursue any of its rights, claims, or compliance with any of its obligations under the Complaint and Receiver Order and the Opinion. Further, while the bankruptcy case continues, the Receiver will continue to comply with the Estate's duties, responsibilities and requirements in this case to protect and preserve the value of the Estate for the benefit of all creditors and investors.

**WHEREFORE**, the Receiver respectfully requests that the Court takes notice of the foregoing, deem that the Receiver complied with its obligation to file this Report in connection with the Opinion, and that it allows the Receiver to supplement this report, as requested, as part of its status report to be filed in connection with the May 19, 2026 status conference.

**RESPECTFULLY SUBMITTED**,

San Juan, Puerto Rico, this 1st day of April 2026.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system, including the U.S. Trustee.

M P M | **MARINI PIETRANTONI MUÑIZ LLC**
*Attorneys for Driven, P.S.C. as appointed Receiver under the Amended Complaint and Receiver Order*

250 Ponce de León Ave., Suite 900
San Juan, PR 00918
Office 787.705.2171
Fax 787.936.7494

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC-PR No. 222301
lmarini@mpmlawpr.com

*/s/ Mauricio O. Muñiz-Luciano*
Mauricio O. Muñiz-Luciano
USDC-PR No. 220914
mmuniz@mpmlawpr.com

16

/s/ *Ignacio J. Labarca-Morales*
Ignacio J. Labarca-Morales
USDC-PR No. 303307
ilabarca@mpmlawpr.com