**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

In re:

**THE PHOENIX FUND LLC**
Debtor

# RECEIVER'S 21-DAY STATUS REPORT

## AND PROPOSED PLAN OF ACTION

Prepared by: Driven Advisors, P.S.C., Court-Appointed Receiver

Date: April 1, 2026

## PART I — REPORT OF ACTIONS TAKEN

### I. Preliminary Statement

Driven, P.S.C. ("Driven" or the "Receiver"), as appointed receiver pursuant to the *Amended Complaint and Receiver Order* (the "Complaint and Receiver Order")[1] and entity authorized to act for the Debtor-in-Possession for The Phoenix Fund LLC ("Phoenix" or the "Fund"), hereby submits respectfully submits this 21-Day Status Report pursuant to the Court's Order entered on March 11, 2026. This report summarizes the actions taken by the Receiver and its counsel, Marini Pietrantoni Muñiz, LLC ("MPM" or the "Receiver's Counsel"), during the first twenty-one (21) days of the receivership, and sets forth a proposed plan of action for the continued administration and the maximization of the value of this estate.

The receivership filing date is February 18, 2026. However, given the Fund's commencement of a bankruptcy case, in the abundance of caution, Driven suspended all receivership endeavors until the Court's order on March 11, 2026. The Receiver's mandate encompasses securing and controlling all assets, conducting investigations, preserving value for creditors and investors, and executing a structured plan for recovery or orderly liquidation under Chapter 11 of the Bankruptcy Code or outside of bankruptcy, in coordination with the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF"). While the Receiver is including a proposed action plan herein, as detailed in the status report being filed by the Receiver, the Receiver is requesting time to further state its position on whether ratify this bankruptcy case or seek its dismissal, and request Court approval of such course of action.

### II. Takeover of Fund Premises (March 13, 2026)

On March 13, 2026, the Receiver arrived at the Fund's office premises located at Villa Caparra 243, PR State Road No. 2, Guaynabo, Puerto Rico. The following is a chronological summary of the intervention:

- 9:57 a.m. — Receiver arrived at office premises. Gates remained closed until 10:02 a.m.
- 10:04 a.m. — Jenice Fuentes, employee of Pariter Wealth Management, opened the building entrance. She informed the team that no Phoenix personnel were present.
- 10:06 a.m. — Ryan Marín and Francisco Christian conducted a survey of external surveillance cameras at four locations: Villa Caparra Norte (Genova St. A1), Caparra Real (PR-2 road), Villa Caparra Development #A52, and Villa Caparra Court #49 (Luis Vigoreaux). None were under Fund's control.
- 10:11 a.m. — Alexis Fuentes Hernandez, Esq. (Fuentes Law Offices, LLC), legal counsel for Phoenix, was contacted by phone. At 10:13 a.m., the team was requested to leave the premises.

---

[1] On February 18, 2026, the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF") issued the Complaint and Receiver Order whereby Driven was appointed as receiver of The Phoenix Fund, LLC (the "Fund"), with, *inter alia*, authority to act as debtor-in-possession in any bankruptcy proceeding.

- Receiver's Counsel (Mauricio Muñiz Luciano) established communication with Phoenix's counsel, who stated that the premises contained no Fund's property, electronic devices, or documentation. No preservation activity was able to be conducted on-site at the time of our intervention

- 10:22 a.m. — Receiver's IT team departed after confirming that no Phoenix staff were present and based on the representations by Phoenix counsel that no Fund assets were physically located in the premises.
- Post-departure, the Receiver's IT team made five (5) additional attempts to contact Kryonix (Microsoft 365 service provider). At approximately 5:00 p.m., Kryonix granted access to Phoenix Funds' Microsoft 365 environment.

Key Observations: (1) No Phoenix personnel were present; (2) No physical or electronic assets were observed; (3) Four external cameras were mapped, but none belonged to Phoenix; (4) Phoenix's counsel confirmed absence of Fund property at the location.

The following sections (**III through VI**) summarize the Receiver's actions organized by stage. Each table includes a descriptive task name, the current status, and a comments column detailing the specific efforts undertaken and any limitation encountered. The status categories used throughout this report are defined as follows:

> **Status Legend**
>
> **Completed** — Action has been fully executed and documented. No further steps required.
>
> **In Progress** — Action has been initiated and work is actively underway. See Comments column for details on current status, efforts taken, and any limitations encountered.
>
> **Not Started** — Action has been identified but has not yet been initiated. Included in the Receiver's plan for execution.

## III. Stage 1: Governance and Control Transition

The Receiver has taken the following actions to assert managerial authority over the Fund, take control of assets, books, records, and systems, and comply with initial bankruptcy filing requirements:

| Task Name | Status | Comments |
| --- | --- | --- |
| **Court Order** | **Completed** | The Receiver diligence obtaining certified copies of Court Order appointing Receiver and filed. |
| **Receiver notices** | **In Progress** | Receiver drafted and sent formal notice templates were created and approved by Receiver's counsel. Email distribution list being compiled from available records. Distribution to all parties (investors, vendors, banks, creditors, employees/contractors) underway. |



21-Day Status Report

Page 3

| Task Name | Status | Comments |
|---|---|---|
| First possession letter | Completed | Receiver's Counsel sent first letter to prior Fund management to take possession and control of Fund assets and records on March 12, 2026. |
| Second access demand | Completed | MPM sent second letter to prior Fund management on March 24, 2026, regarding lack of access to software, server, and records. |
| Premises takeover | Completed | Receiver physically visited Fund premises at Villa Caparra 243, Guaynabo on March 13, 2026. No Fund personnel or assets found. Four (4) external surveillance cameras documented at neighboring properties (none under Fund control). Photographic evidence obtained. |
| Financial records | In Progress | Access restricted to Fund due to lack of cooperation from Fund's prior management and blocked systems. Partial records obtained through OCIF data room and Special Examination archives. Continued efforts to compel turnover. |
| Corporate documents | Completed | Receiver gathered and stored LLC Agreement, OCIF filings, and amendments obtained from OCIF data room and Driven Special Examination archives. |
| Investor files | In Progress | Receiver secured subscription agreements, K-1s, and capital account statements from data room and OCIF sources. No physical files received. |
| Bank notifications | In Progress | Receiver sent formal notifications sent to Banco Popular, Oriental, First Bank and Banesco regarding change in management authority. Response received from BPPR; awaiting responses and account information from remaining institutions. |
| System passwords | In Progress | Microsoft 365 environment was blocked by Fund's prior management upon bankruptcy filing. Administrative access later obtained from Kryonix on March 13; full password change and system lockdown pending Receiver's IT team coordination. |
| DIP bank account | Completed | New Receiver-controlled DIP bank account established. |
| DIP accounting | In Progress | Receiver is in the process of setting up new QuickBooks account for post-petition books and records. Coordinating with CPA Luis Carrasquillo and Marcos Vélez for available historical financial information. |
| 341 Meeting of Creditors | In Progress | Initial meeting held on March 30, 2026. Further meeting continued *sine die* pending resolution of motion for reconsideration filed. |
| Top 20 creditors list | In Progress | Receiver prepared preliminary list from available records. Granted by US Trustee seven days after disposal of motion for reconsideration to submit amendments to schedules and statements |



21-Day Status Report

Page 4

| Task Name | Status | Comments |
|---|---|---|
| **Personnel retention** | **In Progress** | Receiver is currently in the process of identifying key personnel who can assist the Receiver with the transition and information gathering efforts. Received obtained conflicting representations about whether Fund has or had any employees. In process of verification of veracity of such representations. |
| **Unauthorized engagements** | **Completed** | Receiver's Counsel filed motion on 3/15/26 informing Court of lack of authority for unauthorized professional engagements; requested denial/withdrawal of prior retentions. Retention letters sent to A. Fuentes, L. Carrasquillo, and L. Sepulvado. Communications ongoing for potential resolutions with A. Fuentes and L. Carrasquillo. |
| **Retainer recovery** | **Completed** | Supplement to objections to retention drafted by Receiver's Counsel requesting return retainer amounts. Second supplement filed on March 25, 2026. |
| **M365 access obtained** | **Completed** | Receiver's IT team was able to gain administrative access to Phoenix Funds' Microsoft 365 environment on March 13, 2026. |

## IV. Stage 2: Compliance with OCIF Liquidation Orders

The Receiver has initiated compliance actions in coordination with OCIF directives and the ongoing administrative proceeding:

| Task Name | Status | Comments |
|---|---|---|
| **Investment freeze** | **In Progress** | Receiver initiated notification process to investment managers/brokers regarding freeze per OCIF order. Receiver worked on the creation of a distribution lists from available records. |
| **Liquidation manual** | **In Progress** | Receiver created a spreadsheet called Master Task Tracker as comprehensive liquidation procedures tool aligned with OCIF requirements and Chapter 11 obligations and requirements across 11 stages. |
| **Receievership hearing** | **Completed** | Hearing held March 20, 2026. Oral argument on motion to dismiss completed. |
| **Opposition to MTD** | **Completed** | Opposition to motion to dismiss and motion to intervene filed by Phoenix Fund Advisor LLC in OCIF administrative proceeding filed on March 30, 2026. |



21-Day Status Report
Page 5

## V. Stage 3: Asset Inventory and Financial Assessment (Initial Actions)

The Receiver has begun the critical process of inventorying and assessing the Fund's assets and liabilities. Based on representations by the Fund and preliminary review of available documentation, the Receiver has identified the Fund's investment in High Trend International LLC ("HTI") as potentially being the most significant asset of the estate, requiring priority investigation:

| Task Name | Status | Comments |
| --- | --- | --- |
| Investment positions | In Progress | Receiver's IT team began compiling schedule of all investment positions from OCIF data room, Special Examination archives, and M365 documents. HTI identified as potential primary asset requiring priority investigation. |
| HTI investigation | In Progress | Investigation launched: compiling investment timeline, analyzing corporate structure, identifying Brazil concession locations. Detailed plan outlined in Section X of this report. |
| Padre Media analysis | Not Started | Legal analysis and liquidation strategy for Padre Media investment to be developed by Receiver and Receiver's Counsel. |
| Universal Note | In Progress | Meeting held between Universal and Receiver's Counsel on 3/23/26. Universal consigned $533K on 3/24. Remaining $98K balance pending. Full legal analysis of note terms and conditions is currently in progress. |
| Extent of Brevet Security Interests | In Progress | Legal analysis required to determine whether Brevet holds a perfected security interest over cash collateral. Limited objection from Brevet asserting security interest over settlement payment. |

## VI. Stage 4: Legal, Case Posture, and Liquidity Actions

The Receiver and MPM have taken significant legal, administrative, and liquidity-related actions during the initial 21-day period:

| Task Name | Status | Comments |
| --- | --- | --- |
| 21-day status report | In Progress | The Receiver began compiling of information for all sections. Separate task tracker created to coordinate inputs from Receiver's Counsel. Report will be filed with Court on 4/1/26. |
| MPM employment | Completed | Application to employ MPM as counsel filed with Court on 3/23/26. Conflicts/disinterest list circulated and included in retention disclosures. Application granted on March 27, 2026. |
| BDO employment | In Progress | Application to employ BDO filed with Court on 3/27/26. Pending approval by Court. |



21-Day Status Report

Page 6

| Task Name | Status | Comments |
|---|---|---|
| **Professional compensation** | **In Progress** | Draft motion to establish payment procedures for professionals prepared by Receiver's Counsel on 3/23/26. Pending Receiver review. |
| **Pariter demand** | **Completed** | Demand letter sent to Pariter on 3/16/26 regarding unauthorized transfer of funds. No response received. Next step: seek court relief to compel return. |
| **Blue Sky transaction** | **Completed** | Motion filed 3/17/26. Brevet filed limited objection on March 24. Agreement not to use funds absent court order or agreement with Brevet filed to preserve value to estate of transaction. Transaction approved on March 27, 2026. Funds received on March 30, 2026. |
| **Restricted accounts** | **In Progress** | Receiver sent letters to BPPR and Oriental regarding account information and restrictions. Reponses to both letters were received and are currently under review. |
| **February 2026 MOR extension** | **Completed** | A motion for extension was filed by the Receiver's Counsel on 3/23/26, granted by Court 3/25/26. New deadline: April 20, 2026. |
| **Disputed claims ext.** | **Completed** | Ex A motion for extension was filed by the Receiver's Counsel on 3/23/26, granted by Court 3/25/26. New deadline: April 20, 2026. |
| **Section 341 meeting** | **In Progress** | Preparation sessions held 3/25–3/26 with Receiver's Counsel. Extension requested and not granted. Preliminary meeting held on 3/30/26. Continued *sine die* pending amendment to schedules. |
| **Affiliates report** | **Completed** | Preliminary report on affiliates per Bankruptcy Rule 2015.3 filed on March 26, 2026. To be supplemented every 6 months. |
| **Chapter 5 claims analysis** | **In Progress** | Receiver began analysis of transfers within 90 days (third parties) and 1 year (insiders/affiliates) per § 547/§ 548 in progress. Additional validation to be made upon being granted access to Quick books / Bank Statements. Evidence requests to vendors and third parties being prepared. |
| **Blue Sky memo** | **Completed** | Blue Sky Transaction memorandum prepared, reviewed by counsel, signed, and filed with the Court. |



## PART II — PROPOSED PLAN OF ACTION

**PRELIMINARY PLAN — SUBJECT TO REVISION**

The plan of action set forth in Part II of this Report is preliminary in nature and is presented for the Court's information and guidance. The Receiver anticipates that the specific actions, priorities, timelines, and strategies described herein will evolve and be modified as the Receiver continues its investigation and assessment of the estate's assets, liabilities, and claims. In particular, the findings from the ongoing HTI investment investigation, analyses, creditor interactions, and cross-border due diligence may materially alter the scope, sequencing, and direction of the Receiver's proposed actions.

The Receiver will keep the Court and all parties in interest informed of any material changes through periodic status reports and, where appropriate, will seek additional Court authorization before implementing actions that differ materially from those described herein.

## VII. Overview of Proposed Plan

The Receiver respectfully presents to this Court its preliminary proposed plan of action for the continued administration of the estate. The plan is organized by the stages of the Receiver's Master Task Tracker, a comprehensive framework tool developed to ensure systematic execution and accountability throughout the receivership.

The Receiver notes that this is an ongoing plan that will be refined and adjusted as the investigation progresses and new information comes to light. The complexity and multi-jurisdictional nature of the Fund's investment portfolio — particularly the HTI investment in Brazil — means that the Receiver's understanding of the estate's assets, liabilities, and optimal recovery strategies will deepen materially over the coming weeks and months. Accordingly, the specific actions, timelines, and priorities set forth below represent the Receiver's best current assessment and are subject to modification based on the Receiver's ongoing findings.

The Receiver's immediate priority is the completion of Stage 3: Asset Inventory and Financial Assessment, with particular emphasis on the investigation and potential monetization of the Fund's investment in HTI, which appears to represent the most significant potential value for the estate.



Case:26-00712-ESL11   Doc#:91-1   Filed:04/01/26   Entered:04/01/26 16:38:46   Desc:
Exhibit A - Receivers 21-Day Status Report and Proposed Plan of Action   Page 9 of 13

21-Day Status Report
Page 8

## VIII. Receivership Roadmap — Projected Timeline

The following timeline illustrates the Receiver's preliminary projected schedule for the major workstreams of the receivership. As noted above, this timeline is subject to revision as the investigation evolves and new findings emerge:



*Note: Timeline is illustrative and preliminary. The colored bars represent estimated active periods for each workstream. Actual durations may shift based on cooperation from prior management, complexity of cross-border matters, court scheduling, and findings from ongoing investigations. The Receiver will provide updated timelines in subsequent status reports.*

## IX. Stage 3: Asset Inventory and Financial Assessment — Detailed Plan

Stage 3 is the centerpiece of the Receiver's near-term strategy. The Fund's investment portfolio is complex, multi-jurisdictional, and requires rigorous analysis to determine value, recoverability, and optimal monetization paths. The actions, timelines, and priorities below represent the Receiver's current best assessment and are subject to adjustment as investigations progress:

| Task Name | Description | Est. Period |
|---|---|---|
| **Asset positions** | Compile complete list of all investment positions from all available sources. | Months 1–3 |
| **Bank accounts** | Identify all bank and brokerage accounts with current balances. | Months 1–3 |
| **Liabilities** | Document all liabilities including loans, payables, contingent liabilities, and legal claims. | Months 2–4 |
| **NAV reconciliation** | Reconcile investor capital accounts to Fund net asset value. | Months 1–3 |
| **Distressed assets** | Flag illiquid or distressed assets requiring immediate protective measures. | Months 1–3 |
| **Insurance coverage** | Assess insurance coverage status for all fund assets and address gaps. | Months 1–3 |



21-Day Status Report

Page 9

| Task Name | Description | Est. Period |
|---|---|---|
| **Property security** | Secure any real property interests (access, insurance, property management). | Months 1–3 |
| **Valuation methods** | Determine appropriate valuation methodology for each asset class per GAAP/ASC 820. | Months 3–9 |
| **Appraisers** | Engage independent appraisers/valuators for asset classes requiring third-party valuation. | Months 3–15 |
| **Preliminary financials** | Prepare preliminary balance sheet and statement of net assets. | Months 1–6 |
| **Debt/equity roll-up** | Prepare comprehensive capital structure analysis showing priority of claims. | Months 1–6 |
| **Debt instruments** | Identify all secured, unsecured, and subordinated debt instruments with terms. | Months 1–6 |
| **Cash flow analysis** | Analyze all historical cash inflows and outflows of the Fund. | Months 1–9 |
| **Capital tracing** | Trace source and use of all investor capital contributions and distributions. | Months 1–12 |
| **Portfolio assessment** | Assess all portfolio investments — control vs. non-control positions and ownership. | Months 1–6 |
| **Governance rights** | Determine Fund's governance rights for each investment. | Months 3–6 |
| **§ 541 estate inventory** | Prepare comprehensive property of the estate inventory. | Months 6–9 |
| **Litigation assets** | Identify and evaluate potential causes of action belonging to the estate. | Months 6–12 |
| **HTI debt/equity** | Legal analysis of HTI documents to determine debt vs. equity characterization. | Months 1–3 |
| **Padre Media strategy** | Analyze and develop liquidation strategy for Padre Media position. | Months 1–3 |
| **Universal Note** | Complete legal analysis of note terms, conditions, and payment obligations. | Months 1–3 |
| **Brevet analysis** | Analyze whether Brevet has perfected security interest over cash collateral. | Months 1–3 |



21-Day Status Report
Page 10

## X. HTI Investment Investigation — Detailed Action Plan

The Fund's investment in High Trend International LLC ("HTI") has been identified as potentially the single most significant asset of the estate. The Receiver's initial analysis indicates that the Fund holds membership interests in HTI, which in turn holds interests in HTB and its participation in public lighting PPP concessions across five Brazilian municipalities: Rio de Janeiro (Smart RJ), Feira de Santana (Conecta Feira), Aracaju (Conecta Aracaju), Campinas, and Ribeirão Preto.

The Receiver estimates that the HTI investigation, including cross-border due diligence and independent valuations of the five concession projects, will require approximately three (3) to six (6) months for initial analysis, and potentially six (6) to nine (9) months to complete comprehensive valuations and prepare a full report for the Court. The Receiver proposes the following structured investigation:

| Task Name | Description | Status |
| --- | --- | --- |
| Investment timeline | Compile complete investment timeline: 6 phases from Jan 2020 to Dec 2025, all disbursements and key agreements. | In Progress |
| Corporate structure | Analyze HTI corporate structure, subsidiaries, and related entities. Build organizational chart with ownership percentages across all tiers. | In Progress |
| Brazil locations | Identify each Brazil project location (5 concessions) with supporting documentation and contextual analysis. Coordinate project site visits. | In Progress |
| Document collection | Compile and distribute priority documents list (PBC): corporate structure, contracts, financial records, audited financials. | In Progress |
| Legal analysis | Engage counsel to perform legal analysis of HTI documents, including characterization of Fund holdings and implications for estate recovery. | Not Started |
| Brazil legal counsel | Engage Brazil legal counsel for cross-border legal matters, local regulatory compliance, and concession contract analysis. | Not Started |
| CPA/CVA support | Engage local CPA/CVA support in Brazil for audit, tax analysis, and financial due diligence on concession entities. | Not Started |
| Historical valuations | Review prior valuation reports and presentations to assess historical valuation basis and identify areas requiring updated analysis. | Not Started |
| Key interviews | Conduct interviews with relevant parties including HTI management, development partners, and prior advisors. | Not Started |
| Independent valuations | Obtain independent valuation quotes from Brazil-based firms for each of the 5 concession projects. | Not Started |



21-Day Status Report
Page 11

| Task Name | Description | Status |
|---|---|---|
| **Restructuring analysis** | Analyze December 2025 restructuring terms and implications for estate recovery and creditor distributions. | **Not Started** |
| **Concession financials** | Assess audited financials for concession SPEs, including revenue, equity positions, reinvestment provisions, and contractual obligations. | **Not Started** |
| **HTI report** | Prepare comprehensive HTI investment analysis report for Court submission integrating all investigation workstreams. | **Not Started** |

## XI. Proposed Actions — Stages 4 Through 11

In addition to the priority Stage 3 workstream, the Receiver proposes the following actions across the remaining stages. These proposed actions are preliminary and will be refined in subsequent status reports as the Receiver's understanding of the estate deepens and as it determines whether to ratify this bankruptcy case and pursue the litigation in the bankruptcy forum or to seek the dismissal of this case.:

| Stage | Key Planned Actions | Est. Period |
|---|---|---|
| **Stage 4: Legal & Case Posture** | File bankruptcy schedules and SOFA; complete § 1106(a)(4) investigation report; conduct Rule 2004 examinations; analyze avoidable transfers (§ 547/§ 548); assume or reject executory contracts (§ 365); prepare for status conference; address other bankruptcy contested matters or reporting requirements that may arise. | Ongoing |
| **Stage 5: Cooperation & Recovery** | Issue formal demand letter to prior management; conduct depositions/sworn interviews; pursue turnover of remaining records and systems; enforce cooperation through court orders if necessary. | Ongoing |
| **Stage 6: Claims & Liabilities** | Bar date set for proofs of claim; examine and object to claims; analyze claims by priority (§ 507); quantify all claim categories. | Ongoing |
| **Stage 7: Liquidation Roadmap** | Develop asset disposition strategy; prepare § 363 sale motions; establish bid procedures; coordinate with creditors; develop HTI possible monetization strategy. | Ongoing |
| **Stage 8: Stakeholder Comms** | Establish investor communication portal; provide periodic updates; hold creditor meetings; coordinate with U.S. Trustee. | Ongoing |
| **Stage 9: Risk & Controls** | Maintain risk register; implement internal controls; monitor compliance with court orders and regulatory directives. | Ongoing |



21-Day Status Report
Page 12

| Stage | Key Planned Actions | Est. Period |
|---|---|---|
| **Stage 10: Plan & Distribution** | Prepare liquidation plan and disclosure statement; solicit votes; seek confirmation per § 1129; implement distribution framework. | Ongoing |
| **Stage 11: MOR & Compliance** | File Monthly Operating Reports; pay UST quarterly fees; file post-petition tax returns; maintain § 345 compliance. | Monthly/Ongoing |

## XII. Critical Upcoming Deadlines

The Receiver is cognizant of the following imminent deadlines and upcoming milestones:

| Date | Event / Deadline |
|---|---|
| **April 20, 2026** | February 2026 Monthly Operating Report ("MOR") — extended deadline |
| **April 20, 2026** | Notice of Disputed Claims — extended deadline |
| **April 21, 2026** | March 2026 MOR - deadline |
| **May 19, 2026** | Status Conference (Teams meeting) |

Respectfully submitted,

DRIVEN, P.S.C.
Court-Appointed Receiver

By: _____

Ryan Marín, CPA
Managing Shareholder
Driven P.S.C.

