**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | Case No. 26-00712 (ESL) |
| THE PHOENIX FUND LLC | Chapter 11 |
| Debtor | |

**THE RECEIVER'S MOTION FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING, EFFECTIVE *NUNC PRO TUNC***
**TO PETITION DATE, REJECTION OF ADVISORY AGREEMENT WITH**
**THE PHOENIX FUND ADVISOR, LLC AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE ENRIQUE S. LAMOUTTE
UNITED STATES BANKRUPTCY JUDGE:

**COMES NOW** Driven, P.S.C. ("Driven" or the "Receiver"), as appointed receiver pursuant to the *Amended Complaint and Receiver Order* (the "Complaint and Receiver Order") and the entity authorized to act for the debtor-in-possession, hereby submits this motion (the "Motion") for an order authorizing, effective *nunc pro tunc* to February 23, 2026 (the "Petition Date")[1], the rejection of any remaining interest that the Fund may have in connection with that certain advisory agreement[2] (any such remaining interest, the "Agreement") by and between the Fund and affiliate The Phoenix Fund Advisor, LLC (the "Advisor"), for the following reasons:

**Jurisdiction**

The United States Bankruptcy Court for the District of Puerto Rico (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] Prior to the date of filing of the captioned case (the "Petition Date"), on February 18, 2026, the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF") issued the Complaint and Receiver Order whereby Driven was appointed as receiver of The Phoenix Fund, LLC (the "Fund"), with, *inter alia*, authority to act as debtor-in-possession in any bankruptcy proceeding, appearing as representative of the Fund's bankruptcy estate (the "Estate").

[2] Prior to the filing of this Motion, the Receiver issued a letter of immediate termination of the Agreement to the Advisor, for its material breach therewith. See, **Exhibit A**. The Receiver is seeking the relief sought herein to reject from the Estate any interest, if any, that may be remaining in connection with the Agreement.

1

Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

Pursuant to §365 of title 11 of the United States Code (the "Bankruptcy Code") rules 2002(a), 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(c) of the Bankruptcy Local Rules for the District of Puerto Rico, the Receiver seeks the entry of an order authorizing the rejection, effective as of the Petition Date, of the Agreement between the Fund and the Advisor, a statutory affiliate and insider of the Fund pursuant to 11 U.S.C. §§ 101(31), (E)[3]. A copy of the Agreement is attached as **Exhibit B** hereto.

### Background

1. On the Petition Date, the Fund's prior management filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. See, Docket No. 1.

2. Other than the Receiver, no trustee, examiner, or committee of unsecured creditors has been appointed.

### Agreement to Be Rejected

3. As advanced in the Receiver's Status Report filed on April 1, 2026 (Docket No. 91), since the entry of this Court's order confirming that the Receiver is the entity authorized to act on behalf of the Estate and the debtor-in-possession, the Receiver has undertaken numerous tasks to obtain possession and control of all of the Fund's assets and documents, and commence the liquidation and administration of the Estate. See Docket No. 91

---

[3] See also, *Order to Show Cause*, Docket No. 70, p. 2, regarding information available at Registry of Corporations and Entities of the Puerto Rico Department of State.

4.      Among these, the Receiver, with the assistance of its advisors, has been undertaking a comprehensive review of the Fund's contracts and leases to identify those that are no longer necessary for the Estate's liquidation and therefore warrant rejection.  See Docket No. 91, Paragraph 50.

5.      Through this Motion, the Receiver seeks authority to reject the Agreement *nunc pro tunc* to the Petition Date. The basis to support the Rejection are detailed below and include the following.

6.      First, the Advisor has breached its obligations under the Agreement and, thus, has not performed with the same. See e.g., **Exhibit A**, Letter of Termination.

7.      Second, the services provided (or alleged to be provided) under the Agreement are not needed nor will they provide any benefit, if indeed the services were provided, to the Estate. The Agreement purports to have the advisor provide investment and financial advice, management, analysis of investments, negotiate to obtain loans and other capital commitments, among other tasks.  As part of the Complaint and Receiver Order, the Fund cannot make any new investments and the Receiver has its own financial advisor and does not need any of the services under the Agreement to evaluate the Fund's investments or conduct its duties under the Complaint and Receiver Order.  Further, as advanced previously, the Advisor has breached and has not complied with its duties under the Agreement.

8.      Third, and critically, based on the Fund's prior managements, a potential assumption of the Agreement – in addition to providing no benefit to the estate – could burden the estate with $10 million in potential cure costs.[4]  For context, the Receiver notes that the *List of*

---

[4]  This is based on the Fund's prior management allegations in the Schedules of Assets and Liabilities filed in this case, and the amount has not been independently verified by the Receiver. As such, the Receiver reserves all rights regarding its claims, defenses, and causes of action against the Advisor.

*Creditors Who Have the 20 Largest Unsecured Claims and Are* **Not Insiders** attached to the petition and Fund's prior management include the Advisor as an unsecured creditor holding a claim of $10,356,523.00 in connection with "*Advances, Fees, and Reimbursements in Arrears on Executory Contract*"[5]. <u>See</u>, Docket No. 31, p. 3. For this reason alone, not rejecting (and, conversely, assuming) the Agreement could, according to the Fund's prior managements allegations, in effect cost the Estate **$10,356,523.00** pursuant to 11 U.S.C. § 365(b)(1)(A)[6].

9.        Fourth, the retroactive rejection date applicable to the Agreement is appropriate to limit potential administrative costs associated therewith, particularly because the Receiver does not need it for its go-forward business plan, as, pursuant to the Complaint and Receiver Order, the Fund is to be liquidated instead of to continue operations.

10.        In sum, the Receiver has determined, in its business judgment, that rejecting the Agreement–which provides no benefit to the Estate and instead results in unnecessary significant expenses– as provided herein is in the best interest of the Estate and its other creditors. Accordingly, the Receiver requests that the Court approve rejection of the Agreement and that such rejection be deemed effective *nunc pro tunc* to the Petition Date.

---

[5] The Receiver also notes that the Fund's *Statement of Financial Affairs* disclosed that, during the year preceding the Petition Date, the Fund made twelve (12) payments to the Advisor totaling $3,059,165.61 for "*Operational Expenses and Reimbursements under the Advisory and Management Agreement*" <u>See</u>, Docket No. 31, p. 36, *Item 4.1*. Thus, by the Fund's own representations, the Advisor's services under the Agreement–and assuming that the alleged arrears of $10MM were not accrued during the same year preceding the Petition Date– **annually** cost the Fund at the very least **$3,059,165.61.**

[6] After all, it is black letter law may no be assumed in part and rejected in part and that "[t]he trustee [or debtor-in-possession] must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits". See, Richard Levin & Henry J. Sommer, 3 Collier on Bankruptcy ¶365.03[3] (16th ed. 2026).

4

**Basis for Relief**

I. **The Rejection of the Agreement Is a Sound Exercise of Driven's Business Judgment and Provides the Estate with Significant Cost Savings.**

Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 735, 741 (5th Cir. 1996). Section 365(a) of the Bankruptcy Code provides the trustee with an opportunity to determine which of the pre-petition contracts and leases are beneficial to the estate and which should be assumed or rejected. In re GCP CT Sch. Acquisition, LLC, 429 B.R. 817, 824 (B.A.P. 1st Cir. 2010); see also, In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2nd Cir. 1993) (noting that the purpose of rejection of executory contracts and unexpired leases is to permit the debtor-in-possession to renounce title to and abandon burdensome property of the estate). Rejection "release[s] the debtor's estate from burdensome obligations that can impede a successful reorganization," leaving creditors with a general unsecured claim for contract damages. In re The Fin. Oversight & Mgmt. Bd. for Puerto Rico, 9 F.4th 1, 8 (1st Cir. 2021). In sum, "[s]ection 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward. If so, the debtor will want to assume the contract, fulfilling its obligations while benefiting from the counterparty's performance. But if not, the debtor will want to reject the contract, repudiating any further performance of its duties." Mission Prod. Holdings, Inc. v. Tempnology, LLC, 587 U.S. 370, 373–74 (2019).

The bankruptcy court will generally approve the choice to reject an executory contract or unexpired lease, under the deferential "business judgment" rule. Id. "[M]ost courts have applied a

5

"business judgment" test to trustees' decisions to assume or reject contracts or leases." <u>See</u>,

Richard Levin & Henry J. Sommer, 3 Collier on Bankruptcy P 365.03[2] (16th ed. 2026). Indeed,

under the "business judgment" test, a debtor must simply put forth a showing that assumption or

rejection of the executory contract or unexpired lease will benefit the Debtor's estate. <u>In re Vent

Alarm Corp.</u>, No. 15-09316-MCF11, 2016 WL 1599599, at *3 (Bankr. D.P.R. Apr. 18, 2016). A

court should approve a debtor's decision to reject contracts or leases unless that decision is the

product of "bad faith, or whim, or caprice." <u>See</u> <u>In re Trans World Airlines, Inc</u>., 261 B.R. 103,

121 (Bankr. D. Del. 2001).

The Receiver, in consultation with its advisors, has determined in its business judgment that

the Agreement is neither necessary for the Receiver to liquidate the Fund nor a source of potential

value for the Estate.

In support of its reasoning, the Receiver notes that the terms of the Agreement itself reveal its

unnecessary nature in the context of liquidation:

> "**Duties of the Advisor**. The Advisor undertakes to use its best efforts to present to the Company potential Investments and to provide a continuing and suitable investment program consistent with the investment objectives and policies of the Company as determined from time to time by the Manager with the advice of the Advisory Board. In performance of this undertaking and consistent with the provisions of the most recent Memorandum used by the Company, the Certificate of Formation and the Operating Agreement, the Advisor shall, either directly or by engaging an Affiliate:
>
> **(a)** serve as the Company's investment adviser and financial advisor and provide research and economic and statistical data in connection with the Company's assets and investment policies;
>
> **(b)** act as managing member of the Company in accordance with the terms of the Operating Agreement;
>
> **(c)** provide for the daily management of the Company and perform and supervise the various administrative functions reasonably necessary for the management of the Company;
>
> **(d)** investigate, select and, on behalf of the Company, engage and conduct business with such Persons as the Advisor deems necessary to the proper performance of its obligations hereunder, including, but not limited to, consultants, accountants, correspondents, lenders, technical advisors, attorneys, brokers, underwriters, corporate fiduciaries, escrow agents, depositories, custodians, agents for collection, insurers, insurance agents, banks, builders, developers, property owners, mortgagors, and any

6

and all agents for any of the foregoing, including Affiliates of the Advisor, and Persons acting in any other capacity deemed by the Advisor necessary or desirable for the performance of any of the foregoing services, including, but not limited to, entering into contracts in the name of the Company with any of the foregoing;

**(e)** consult with the Advisory Board in the formulation and implementation of the Company's financial policies, and, as necessary, furnish the Advisory Board with advice with respect to the investment objectives and policies of the Company

**(f)** (i) locate, analyze and select potential Investments; (ii) structure and negotiate the terms and conditions of transactions pursuant to which Investments will be made; (iii) make Investments on behalf of the Company in compliance with the investment objectives and policies of the Company; and (iv) arrange for financing, and refinancing and make other changes in the asset or capital structure of, and dispose of, reinvest the proceeds from the sale of or otherwise deal with the Investments;

**(g)** provide the Advisory Board with periodic reports regarding prospective Investments for the Company;

**(h)** make on behalf of the Fund any required filings with government authorities, and take on behalf of the Fund any actions required to ensure continued compliance by the Fund with Act 185;

**(i)** negotiate on behalf of the Company with banks and other lenders for loans to be made to the Company, and negotiate on behalf of the Company with investment banking firms, Placement Agents and Selected Dealers or negotiate private sales of securities or obtain loans for the Company, but in no event in such a way so that the Advisor shall be acting as brokerdealer or underwriter; and provided, further, that any fees and costs payable to third parties incurred by the Advisor in connection with the foregoing shall be the responsibility of the Company;

**(j)** whenever the Advisor shall determine it to be appropriate or required by law, rule or regulation, obtain reports (which may be prepared by the Advisor or its Affiliates), concerning the value of Investments or contemplated Investments;

**(k)** obtain for, or provide to, the Company such services as may be required in acquiring, managing and disposing of Company assets, including, but not limited to (i) the negotiation, making and servicing of Loans; (ii) the disbursement and collection of Company monies; (iii) the payment of debts of and fulfillment of the obligations of the Company; and (iv) the handling, prosecuting and settling of any claims of or against the Company, including, but not limited to, foreclosing and otherwise enforcing mortgages and other liens securing Loans;

**(l)** from time to time, or at any time reasonably requested by the Advisory Board, make reports to the Advisory Board of its performance of services to the Company under this Agreement;

**(m)** prepare or retain third parties to prepare the reports required to be provided to Members pursuant to Act 185, and communicate on behalf of the Company with Members as required to satisfy the reporting and other requirements of any governmental bodies or agencies to Members and third parties and otherwise as requested by the Company;

**(n)** provide or arrange for administrative services and items, legal and other services, office space, office furnishings, personnel and other overhead items necessary and incidental to the Company's business and operations;

**(o)** provide the Company with such accounting data and any other information so requested concerning the investment activities of the Company as shall be required to prepare and file all periodic financial reports, including annual financial statements, and returns required to be filed with any regulatory agency and to distribute such reports and other information to the Membership Interest holders at the Company's request;

**(p)** maintain the books and records of the Company;

**(q)** supervise the performance of such ministerial and administrative functions as may be necessary in connection with the daily operations of the Company's Investments;

**(r)** provide the Company with all necessary cash management services;

**(s)** do all things necessary to assure its ability to render the services described in this Agreement;

**(t)** perform such other services as may be required from time to time for management and other activities relating to the assets of the Company as the Advisor shall deem advisable under the particular circumstances;

**(u)** notify the Advisory Board of all proposed transactions before they are completed."

See, **Exhibit B**, pp. 4-6.

As highlighted above, the Advisor has breached its alleged duties under the Agreement. For example, pursuant to the Agreement, the Advisor was required to "make on behalf of the Fund any required filings with government authorities and take on behalf of the Fund any actions required to ensure continued compliance by the Fund with Act 185". OCIF's Enforcement Action details that that the Fund has been noncompliant for years prior to the commencement of the captioned case. See **Exhibit A** (termination letter).

Second, the vast majority of services that the Advisor allegedly provided to the Fund prior to the Petition Date are wholly unnecessary in the context of liquidation, particularly in that they refer to services of identifying and conducting business endeavors in the form of locating and selecting investments (which the Fund is no longer authorized to do) and that some of them are now, in effect, inapplicable (particularly those referring to the Fund's management).

Third, as detailed above, rejection is critical to avoid potential administrative costs and expenses which would unduly burden the estate. Further, even if the Estate had any use for the Agreement (which is denied), its assumption would cost the Estate at least $10,356.523.00 pursuant to 11 U.S.C. § 365(b)(1)(A), an objectively unjustifiable burden to the Estate given the circumstances of the case.

In sum, the Receiver has determined, in its business judgment, that rejecting the Agreement– which provides no benefit to the Estate and instead results in unnecessary significant expenses– as

provided herein will benefit the estate and its creditors. Accordingly, the Receiver requests that the Court approve rejection of the Agreement and that such rejection be deemed effective *nunc pro tunc* to the Petition Date.

**II.     The Court Should Deem the Agreement Rejected Effective Nunc Pro Tunc to the Petition Date.**

It is appropriate for the Court to deem the Receiver's rejection of the Agreement effective as of the Petition Date. The First Circuit further ruled that a bankruptcy court can approve the rejection of an executory contract and should do so when the balance of equities preponderates in favor of such remediation. In re GCP CT Sch. Acquisition, LLC, 429 B.R. 817, 825 (B.A.P. 1st Cir. 2010) (citing In re Thinking Machines Corp., 67 F.3d 1021, 1028 (1st Cir. 1995)) ("There is little question, however, that a retroactive order may be appropriate as long as it promotes the purposes of section 365(a)"). see also, e.g., In re Cafeteria Operators, L.P., 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from an unexpired lease and the lease counterparties "had unequivocal notice of Debtors' intent to reject prior to the filing" of the rejection motion); In re O'Neil Theatres, Inc., 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (granting retroactive relief based on the circumstances of the case).

Here, the balance of equities supports deeming the Agreement rejected *nunc pro tunc* to the Petition Date. On one hand, absent retroactive rejection, the Estate risks incurring additional administrative expenses for the Agreement (or litigation costs to object to such expenses) with no corresponding benefit whatsoever to it. See, 11 U.S.C. §§ 365(d)(3) & (5), 503(b)(1)(A). Rejecting the Agreement as of the Petition Date rather than waiting until emergence to do so will result in considerable savings to the Estate. On the other hand, the Advisor, the non-debtor, affiliate and insider counterparty to the Agreement is not unduly prejudiced by such retroactive rejection, since

9

(i) the Fund has been prohibited, pursuant to the Complaint and Receiver Order, to operate as a private equity fund since prior to the Petition Date; (ii) rejection of an executory contract or unexpired lease constitutes a breach as of the time immediately before the date a debtor filed its petition, see, 11 U.S.C. § 365(g)(1), so the Advisor's remedies, if any, under the applicable Agreement is the same whether rejection occurs as of the Petition Date or later in the case; and (iii) the Receiver will promptly serve notice of this Motion on the Advisor, who will have a sufficient opportunity to respond.

### Waiver of Bankruptcy Rules 6004(a), 6004(h), and 6006(d)

Driven requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Receiver has established cause to exclude such relief from the fourteen-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

### Reservation of Rights

Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority, or validity of any claim against the Fund or the Estate under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Receiver's, the Estate's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any other agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Receiver's, the Fund's, the Estate's

10

or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (g)

a waiver of the obligation of any party in interest to file a proof of claim; (h) otherwise affecting

the Estate's rights under section 365 of the Bankruptcy Code to assume or reject any other

executory contract or unexpired lease; (i) a waiver of the Receiver's right to state its position in

connection with the Court's March 27th Order to Show Cause; or (j) a waiver of any cause of action

against the Advisor.

**WHEREFORE**, the Receiver requests that the Court enter the Order granting the relief

requested herein and such other relief as the Court deems appropriate under the circumstances

<u>**NOTICE OF TIME TO RESPOND**</u>

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this motion with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the motion will be deemed unopposed and may be deemed automatically granted, unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interests of justice require otherwise.

**RESPECTFULLY SUBMITTED**,

San Juan, Puerto Rico, this 3rd day of April 2026.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties appearing in said system, including the U.S. Trustee.

M P M | **MARINI PIETRANTONI MUÑIZ LLC**
*Attorneys for Driven, P.S.C. as appointed Receiver under the Amended Complaint and Receiver Order*

250 Ponce de León Ave., Suite 900
San Juan, PR 00918
Office 787.705.2171
Fax 787.936.7494

11

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC-PR No. 222301
lmarini@mpmlawpr.com

*/s/ Mauricio O. Muñiz-Luciano*
Mauricio O. Muñiz-Luciano
USDC-PR No. 220914
mmuniz@mpmlawpr.com

*/s/ Ignacio J. Labarca-Morales*
Ignacio J. Labarca-Morales
USDC-PR No. 303307
ilabarca@mpmlawpr.com

12