**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br>THE PHOENIX FUND LLC,<br><br>Debtor. | CASE NO. 26-00712-ESL11<br>Chapter 11<br><br>FILED & ENTERED ON 9/14/2026 |

**OPINION AND ORDER**

On February 23, 2026, The Phoenix Fund LLC (the "Estate" or the "Fund") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Dkt. #1. On July 10, 2026, Driven P.S.C. ("Driven" or the "Receiver"), as the entity authorized to act as debtor-in-possession and representative of the bankruptcy estate of the Fund (Dkt. #33), and United Surety and Indemnity Company ("USIC"), filed an Urgent Joint Motion of the Receiver and USIC for Release and Use of Cash Collateral Bond (the "USIC Motion"). Dkt. #301. The USIC Motion concerned approximately $5,596,885.00 in cash collateral held by USIC (the "USIC Collateral") in connection with the Tax Credit Financial Guarantee Bond No. 23241588 and the Financial Guarantee Bond No. 24246289.

On July 10, 2026, the Bankruptcy Court entered an order (the "Interim Order") granting the USIC Motion and authorizing USIC to release the full amount of the USIC Collateral held by USIC in Treasury Bills and held in account JX-57670 (the "USIC Collateral Account") in UBS Financial Services. Dkt. #305, p. 3. However, the court granted parties in interest twenty-one (21) days from entry of the Interim Order to file objections to the continued use of the USIC Collateral and scheduled a final in-person hearing in connection with the USIC Motion for August 12, 2026. Id. at 5. On July 31, 2026, Dorado Health Group ("DHG") and FCS Advisors,

LLC d/b/a Brevet Capital Advisors ("Brevet") filed objections to the Interim Order. Dkt. ##344, 345, respectively.

After the Receiver, USIC, DHG, and Brevet filed various briefs, on August 21, the court rescheduled the in-person hearing on the USIC Motion for September 3, 2026, before the undersigned. The hearing was rescheduled following the reassignment of this contested matter pursuant to the recusal order entered by Hon. Judge Enrique S. Lamoutte. Dkt. ##349, 410. Then, on August 24, 2026, the Receiver, USIC, and DHG (collectively, the "Movants") filed a Joint Motion for Approval of a Settlement Agreement (the "Settlement Agreement") regarding the USIC Cash Collateral pursuant to Fed. R. Bankr. P. 9019 (the "9019 Motion"). Dkt. #420. In response, on September 1, 2026, Brevet filed an objection to the 9019 Motion (the "Objection") opposing the approval of the proposed Settlement Agreement. Dkt. #456. In turn, on September 2, 2026, the Receiver filed a reply to the Objection (the "Reply"). Dkt. #459. At the in-person hearing held on September 3, 2026, the parties presented their arguments in open court.

Now pending before the court is the 9019 Motion, the Objection, and the Reply. Having considered the 9019 Motion, the Objection, the Reply, the relevant pleadings and exhibits of record, the oral arguments, and the applicable law, the court finds that the Movants have not carried their burden of demonstrating that the proposed Settlement Agreement should be approved under Fed. R. Bankr. P. 9019. Accordingly, and for the reasons stated below, the 9019 Motion is denied, the Objection is granted, and the Reply is denied as moot.

## I. JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), L. Civ. R. 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. RELEVANT BACKGROUND

### a. The Receiver's Position

In its 9019 Motion, the Receiver stated that while it maintains that the Estate has strong legal grounds to recover the USIC Collateral if the matter were to be fully litigated, it acknowledges that its investigation uncovered three (3) different pledge agreements relating to the USIC Collateral transaction, which contain inconsistent designations of the pledgor. Dkt. #420, p. 3. One identifies the Fund as pledgor, another identifies DHG as pledgor, and the most recent one lists the Fund as pledgor within the agreement itself but lists both the Fund and DHG in the signature block. Id. The Receiver argued that protracted litigation could require substantial additional legal expense, and, most importantly, that the inconsistencies associated with the pledge agreements create material litigation uncertainty where an adverse ruling could result in the Estate receiving none of the USIC Collateral. Id. Therefore, the Receiver concluded that, in its best business judgment, the proposed Settlement Agreement eliminates that binary litigation risk; provides the Estate with approximately $2,625,000.00 in immediate liquidity, which the Receiver argued is critical at this stage because the Estate currently lacks sufficient funds to continue paying the expenses required to administer the Estate; and resolves the current dispute with DHG and USIC. Id. at 3-4. Lastly, as discussed in detail below, the Receiver argued that the

Settlement Agreement complies with the applicable legal standard under Fed. R. Bankr. P. 9019, as established by the First Circuit Court of Appeals. Dkt. #459, p. 2.

**b. The Movants' Proposed Settlement Agreement**

As of August 24, 2026, the USIC Collateral totals approximately $5,596,885.00. Id. at 6. The Movants proposed that, subject to court approval, the funds would be distributed as follows: $350,000.00 to Brevet as an adequate protection payment; $2,623,442.50 to the Estate; and $2,623,442.50 to DHG. Id. at 6-7. The Movants stated that the Estate's $2,623,442.50 recovery is to be used only for specified purposes associated with administering and liquidating the Estate. Id. at 7. Permitted expenditures are to include approved Receiver and professional fees, U.S. Trustee fees, costs associated with Fed. R. Bankr. P. 2004 examinations, payments under a confirmed Chapter 11 plan, and other reasonable and necessary administrative expenses approved by the court. Id. The Movants emphasized that the professional fees paid from these funds remain subject to the court's fee-approval process. Id. Additionally, the Movants clarified that the proposed Settlement Agreement does not resolve Brevet's objections or determine Brevet's lien rights, and that the proposed $350,000.00 adequate protection payment does not constitute an admission concerning the validity, priority, perfection, enforceability, or extent of Brevet's asserted interests. Id. at 7, 12.

**c. Brevet's Position**

In its Objection, Brevet, the Estate's largest secured creditor, argued that the proposed Settlement Agreement fails because it is not fair, reasonable, or in the best interests of the Estate or the Estate's creditors under Fed. R. Bankr. P. 9019. Dkt. #456, p. 7. Brevet contended that approval of the Settlement Agreement before determining the validity and extent of its security interest would improperly prejudice a non-settling secured creditor and circumvent the

adjudicatory process required to determine competing interests in estate property. Id. at 23-24. Brevet further criticized the Settlement Agreement for assigning DHG exactly fifty percent (50%) of the USIC Collateral without any evidentiary or economic analysis supporting that allocation. Id. at 28. Brevet claimed that there is no evidence that DHG contributed half of the USIC Collateral, owns half of it, or possesses a contractual or beneficial right to fifty percent of the proceeds, let alone the entire amount. Id. As such, Brevet characterized the fifty/fifty division as an expedient compromise based merely on the existence of a dispute rather than a reasoned valuation of the parties' respective claims and litigation risks. Id. Lastly, as an alternative, Brevet proposed that the entire USIC Collateral be transferred into the Estate while expressly remaining subject to the competing rights and liens of Brevet, DHG, and any other affected parties. Id. at 19-20.

## III. LEGAL STANDARD

Fed. R. Bankr. P. 9019 provides that, upon motion and after notice and a hearing, a bankruptcy court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a). However, approval is not automatic merely because the parties to the compromise have agreed to its terms. The proponents of the settlement bear the burden of persuading the court that the proposal is reasonable and in the best interest of the bankruptcy estate. See In re C.P. del Caribe, Inc., 140 B.R. 320, 325-26 (Bankr. D.P.R. 1992). In evaluating a proposed settlement, the First Circuit Court of Appeals instructs that the bankruptcy court must independently assess and balance the value of the claims being compromised against the value to the estate of accepting the proposed compromise. Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995). In doing so, the bankruptcy court must consider the following four (4) relevant factors:

1. The probability of success in the litigation being compromised;

2. The difficulties, if any, to be encountered in collection;
3. The complexity of the litigation involved, and the expense, inconvenience, and delay attending it; and
4. The paramount interest of creditors and a proper deference to their reasonable views in the premise.

Id. "The court's consideration of these factors should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage of the debtor's estate." Id. It is not for the bankruptcy court to consider and decide the multiple questions raised but rather it must independently canvass the issues and determine whether the proposed compromise falls below the lowest point in the range of reasonableness. ARS Brook, LLC v. Jalbert (In re ServiSense.com, Inc.), 382 F.3d 68, 71-72 (1st Cir. 2004); City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re American Cartage, Inc.), 656 F.3d 82, 88–89 (1st Cir. 2011). Therefore, a settlement agreement need not represent the best result theoretically obtainable through litigation. Rather, the proposed compromise need only fall within the range of reasonableness and satisfy the court that it is fair and equitable and serves the best interests of the bankruptcy estate and its creditors. See ServiSense, 382 F.3d at 71-72; Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir. 1998); Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 51 (1st Cir. 1998); Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983).

## IV. DISCUSSION AND FINDINGS

### a. Probability of Success in the Litigation

The first factor weighs against the approval of the proposed Settlement Agreement on the present record. The court recognizes that the current ownership dispute is not frivolous and that

the existence of multiple pledge agreements containing inconsistent descriptions of the pledgor creates litigation risk; and further, that DHG has asserted both legal and equitable theories of ownership. However, the relevant question is not simply whether litigation risk exists. The question presently before the court is narrower: whether uncertainty concerning DHG's potential interest provides a sufficiently demonstrated basis for transferring approximately one-half of the disputed collateral to DHG. Here, the proposed settlement gives DHG essentially one-half of the net collateral, approximately $2.623 million, yet the 9019 Motion does not identify an evidentiary or economic methodology demonstrating why fifty percent reasonably reflects the value of DHG's asserted rights or the litigation risk faced by the Estate. There is no showing, for example, that DHG contributed fifty percent of the USIC Collateral, owns fifty percent of the collateral under an identified contractual formula, or possesses a claim whose risk-adjusted value approximates $2.623 million.

That concern is heightened by positions previously taken by the Receiver. Prior to filing the 9019 Motion, the Receiver argued that approximately $6 million had been transferred from the Fund's own operating account; that the transaction documents reflected the Fund's ownership; that DHG had no perfected security interest; that a Side Letter executed on October 8, 2025, characterized DHG's relationship with the Fund as debtor-creditor rather than ownership of identifiable property (Dkt. #383, p. 3); and that DHG had not established that the Fund merely acted as a conduit for DHG's property. Those positions do not preclude the Receiver from settling and, in general, parties have every right to reassess risk as a case develops. But when the Receiver moves from asserting that DHG possesses no enforceable interest, to proposing that DHG receive approximately half of a $5.6 million fund, the court

requires a meaningful evidentiary or economic explanation for that substantial concession. On the present record, that bridge has not been suitably built.

Accordingly, while a genuine dispute may justify compromise, the mere existence of a dispute does not, standing alone, establish that an equal division of the disputed property is reasonable. Particularly where the Receiver simultaneously maintains that its legal position is strong, the court requires a more developed explanation connecting the identified litigation risk with the economic consideration being surrendered. As such, the court finds that the Movants have not demonstrated that the proposed approximately fifty-percent allocation to DHG reflects a sufficiently supported assessment of the probability of success and the value of the claims being compromised.

**b. Difficulty in Collection**

The second factor weighs materially against approval of the proposed Settlement Agreement. There is effectively no collection risk associated with the disputed fund. The USIC Collateral is not alleged to have disappeared, been dissipated, or become subject to meaningful collection risk. Rather, the approximately $5,596,885.00 fund is identifiable, held by USIC, and awaits disposition according to the rights of the interested parties and orders of this court. The Receiver principally identifies litigation delay, discovery, possible appeals, and potential evidentiary proceedings as risks affecting its ability to obtain the funds. Those concerns are relevant primarily to the third factor, as explained below. However, they do not establish a material risk that a favorable determination regarding ownership of the USIC Collateral could not ultimately be collected. If the Estate prevails on ownership, the asset is available. That distinguishes this dispute from compromises in which collection uncertainty itself justifies a

substantial discount. Therefore, the court finds that the second factor does not support surrendering approximately $2.623 million of the disputed collateral to eliminate collection risk.

**c. Complexity, Expense, Inconvenience, and Delay**

The third factor affords some support to compromising in principle but does not justify this compromise on the present record. The court accepts the Receiver's representation that litigating competing ownership claims involving three potentially inconsistent pledge agreements, the financing arrangements, the tax-credit proceeds, and the parties' course of dealing could require discovery, evidentiary hearings, and possibly appellate review. The court further recognizes the Receiver's legitimate interest in avoiding unnecessary depletion of estate assets through prolonged litigation, especially considering the estate's genuine and significant liquidity problem. All those concerns deserve substantial weight. Nevertheless, the First Circuit has established that litigation expense, standing alone, does not automatically validate any compromise selected by a fiduciary.

In ServiSense, the litigation expense was found certain to exceed the amount being compromised, making settlement economically straightforward. See ServiSense, 382 F.3d at 75-76. Here, by contrast, the present record does not demonstrate that the anticipated costs, inconvenience, or delay associated with determining DHG's interest reasonably approximate the more than $2.6 million that the proposed Settlement Agreement would permanently transfer to DHG. The Movants have not presented an estimate of expected litigation costs approaching that amount, nor have they demonstrated that adjudication would necessarily require litigation of a scope so disproportionate to the value at issue that relinquishing nearly half of the collateral constitutes a reasonable economic alternative. Moreover, the record suggests the dispute is centered substantially upon documentary evidence already possessed by, or available to, the

parties, including the General Agreement of Indemnity (Dkt. #301, Exhibit G), the three pledge agreements (Dkt. #301, Exhibit K; Dkt. #403, Exhibits E-1, E-2), authorization documents, the Side Letter Agreement (Dkt. #301, Exhibit K), funding records, and the parties' subsequent course of conduct.

Therefore, the court gives appropriate weight to the possibility of further discovery and delay but finds that this factor does not outweigh the deficiency in the economic justification for the proposed fifty/fifty distribution. Nor may the Estate's need for immediate liquidity, standing alone, substitute for the substantive showing required under Fed. R. Bankr. P. 9019. The court acknowledges that administrative efficiency is certainly relevant, but expedition alone cannot supply an otherwise missing basis for finding a settlement fair, equitable, and in the best interests of the Estate.

**d. Paramount Interests of Creditors and Brevet's Objection**

The fourth factor is the factor that concerns the court the most. Brevet contends that the entirety of the USIC Collateral is subject to its prepetition security interest or constitutes proceeds of collateral subject to that interest. Those rights are expressly left unresolved by the proposed Settlement Agreement. However, at the same time, the Settlement Agreement proposes to immediately distribute approximately $2.623 million of the disputed collateral to DHG and to authorize expenditure of the Estate's approximately $2.623 million share for specified administrative expenses; and to do so before either DHG's asserted ownership or Brevet's asserted lien rights have been adjudicated. Thus, although the proposed Settlement Agreement purports to reserve Brevet's rights, implementation of the Settlement Agreement would materially alter the location, possession, and availability of the property against which those rights are asserted. After all, a reservation of rights is clearly of limited practical value if the

property allegedly securing those rights is first transferred to a non-estate third party or consumed through administrative expenditures.

Crucially, the court does not decide today whether Brevet is correct in its assertion of its potential interest in the USIC Collateral. Under Bankruptcy Code Section 363(p)(2), Brevet ultimately bears the burden of establishing the validity, priority, or extent of the interest it asserts. 11 U.S.C. § 363(p)(2). But on the other hand, the court may not disregard the asserted interest when evaluating the economic consequences of this settlement. The Bankruptcy Code requires adequate protection when estate action threatens diminution of an entity's interest in property, and section 363 expressly protects entities asserting interests in cash collateral. 11 U.S.C. §§ 361, 363(e). Here, the Settlement Agreement's proposed $350,000.00 adequate protection payment does not, on the present record, sufficiently mitigate that concern.

This concern is further heightened by the Settlement Agreement's proposed use of the Estate Distribution. The Settlement Agreement expressly contemplates the use of that distribution for administrative expenses while the claims of Brevet and other creditors remain unresolved. The Receiver emphasized, correctly, that the Estate urgently requires liquidity and argued that the proposed $2.623 million payment would permit the Receiver to continue administering the case and pursuing a Chapter 11 liquidation plan. The court does not minimize that need. Further, the court maintains that payment of properly allowed administrative expenses is authorized by the Bankruptcy Code and is an ordinary and necessary aspect of bankruptcy administration. Nothing in this Opinion and Order suggests otherwise. But administrative liquidity is not itself a substitute for the Fed. R. Bankr. P. 9019 analysis and the Estate's need to fund these expenses does not independently establish that transferring approximately $2.623 million of disputed property to DHG is fair or in the paramount interests of creditors.

Additionally, the court finds persuasive Brevet's contention that a less prejudicial mechanism appears available: preservation of the USIC Collateral, or transfer of the funds into an appropriately controlled Estate account subject to existing asserted interests, while the competing ownership and lien rights are adjudicated or resolved. Importantly, today the court is not mandating a particular mechanism for doing so. The court simply notes that the existence of an alternative capable of preserving the value and availability of the collateral while allowing interested parties to litigate or consensually resolve their competing claims materially reduces the force of the Movants' contention that the proposed fifty percent allocation is necessary. For all these reasons, the fourth factor regarding the paramount interests of creditors and the reasonable objection of a creditor asserting a substantial secured interest in the very property proposed to be distributed weighs against approval.

**e. Adequate Factual Foundation for the Fifty-Percent Allocation**

Independent of the four individual factors addressed above, the court further concludes that the record lacks a sufficient factual foundation for the central economic term of the proposed Settlement Agreement. The court is presented with a disputed fund of approximately $5,596,885.00 and three potentially inconsistent pledge agreements. From that dispute, the Settlement Agreement proceeds to an essentially equal division between DHG and the Estate after payment of the proposed $350,000.00 adequate protection amount to Brevet. What is missing is the analytical bridge between those two points. Fed. R. Bankr. P. 9019 does not require mathematical precision in valuing litigation and settlements necessarily incorporate uncertainty. But the court must be able to discern why the consideration being surrendered bears a reasonable relationship to the claims, defenses, litigation risks, and expected benefits being compromised. Here, the record does not sufficiently explain why the appropriate litigation-risk

discount is approximately fifty percent. The court therefore cannot find, on the record presently before it, that the proposed distribution to DHG falls within an adequately demonstrated range of reasonableness or that it constitutes a fair and equitable disposition in the best interests of the Estate and its creditors.

**f. Scope of Findings**

The court emphasizes the limited scope of this ruling. Denial of the 9019 Motion and granting of the Objection do not constitute a determination that:

(a) the Estate is the sole owner of the USIC Collateral;

(b) DHG possesses no legal, equitable, contractual, restitutionary, or other interest in the USIC Collateral;

(c) Brevet holds a valid, perfected, enforceable, or first-priority security interest in all or any portion of the USIC Collateral;

(d) any particular pledge agreement controls as a matter of law;

(e) any party is precluded from presenting evidence concerning the intent of the parties to the relevant agreements; or

(f) any party has waived claims, defenses, objections, or other rights concerning the USIC Collateral.

All these matters remain expressly reserved for adjudication upon an appropriate evidentiary record, through such contested matter or adversary proceeding as may be required, or for resolution through a subsequent consensual arrangement acceptable to all affected parties and approved by the court where necessary.

Today, the court instead finds only that, under the proposed Settlement Agreement and present record, the Movants have not demonstrated that paying approximately $2.623 million to

DHG, while paying Brevet $350,000.00 and leaving Brevet's asserted lien unresolved, falls within the range of reasonableness required by Fed. R. Bankr. P. 9019. The absence of collection risk, the substantial amount being surrendered, the lack of an articulated basis for the equal division, the unresolved secured creditor issues, and the potential effect on the Estate and the creditor body's recoveries, collectively outweigh the benefits of immediate liquidity and avoidance of litigation.

## V. CONCLUSION

For the foregoing reasons, the Joint Motion for Approval of a Settlement Agreement regarding the USIC Cash Collateral pursuant to Fed. R. Bankr. P. 9019 filed at Dkt. #420 is hereby denied and Brevet's Objection at Dkt. #456 is hereby granted to the extent set forth in this Opinion and Order.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of September 2026.

María de los Ángeles González
United States Bankruptcy Judge